AGREEMENT

Between

MINNESOTA PAINTING AND
WALLCOVERING EMPLOYERS ASSOCIATION
and other Painting & Drywall Contractors

And

PAINTERS and ALLIED TRADES

Local Union #106

Duluth, Minnesota

May 1, 1999 to April 30, 2004



EXHIBIT 2

## ARTICLE I

## OBJECTS

The objects of this agreement, and the aims and intentions which all parties are desirous of attaining, are:

(a) To effectuate a spirit of fair dealings between Employer and employee in the Painting Industry in the State of Minnesota.

(b) To establish a high order of efficiency in said industry by intelligent cooperation of Employer and employee.

(c) To, so far as reasonably possible, eliminate strikes, lockouts and interference with work, with their attendant inconvenience to the public, and loss and orderly machinery for the handling of all disputes which may arise in the industry between Employer and employee.

(d) To raise the standards of the Painting and Decorating and Drywall Taping and Finishing Industry in the State of Minnesota and vicinity, so that it may command the respect and increased patronage by the public by giving it the highest quality of work.

## ARTICLE II

## PARTIES

(a) Whenever the word "Association" is used herein it shall mean the Minnesota Painting and Wallcovering Employers Association and all of its members individually and collectively, whether now belonging to said Association or who may hereafter be admitted to membership. The members of said Association being sometimes hereinafter referred to as Employer.

(b) Whenever the word "Union" is used herein, it shall mean the Painters Local Union #106 and all employees covered by this Agreement. All covered employees being sometimes referred to hereinafter as employees.

(b) Business representatives of the Union shall arrange to elect shop and job stewards from among men employed in shop or on jobs. An employer shall have the right of a direct appeal to the Joint Trade Board from any decision pertaining to the appointment of stewards. If there is no appeal within seven days after the Employer has been notified, the steward will remain on that job until all work being done by the Employer is completed.

<u>Section 5 (a)</u> All Union employees now included in the bargaining unit represented by the Union and covered by this Agreement must, during the term hereof, as a condition of employment, maintain their membership in the Union.

(b) Employees covered by this Agreement at the time it becomes effective shall be required as a condition of continued employment to become members of the Union after seven (7) days following the effective date of this Agreement. Employees hired after the effective date of this Agreement and covered by this Agreement shall be required, as a condition of continued employment, to become members of the Union after seven (7) days following the beginning of their employment.

(c) Employees whose membership in the Union is terminated by the Union by reason of the failure of the employee to tender or pay initiation fees and periodic dues uniformly required as a condition of acquiring or retaining membership, shall not be continued in the employ of any Employer under this Agreement, after receiving written notice thereof from the Union

<u>Section 6</u> The decorating of ceilings and wall, priming and painting of all surfaces of wood, metal, plaster, masonry or concrete, including but not limited to frames, screens, building trim (wood or metal), pipes, radiators, pine covering, floors, fire proofing, lead based paint removal and abatement, and the hanging with adhesive of all wall coverings for protective or decorative purposes and applying, with tools of the trade, damp proofing, insulation and rust prevention materials and all preparation therefore, and taping and patching required in any wall construction, shall be done by employees in the Bargaining Unit covered by this Agreement, and any other items not included in the above but part of this trade as designated by the Painting and Decorating Contractor of America and the International Brotherhood of Painters and Allied Trades, and all work covered under Jurisdiction Settlements. To include fireproofing.

(d) All charges of violations of Article VII shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement on the handling of grievances and the final and binding resolution of disputes. As a remedy for violations of this Article, the Joint Trade Board or Arbitrator shall be able, at the request of the union, to require an Employer to pay 1) to affected employees covered by this agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations, and 2) into the affected Joint Trust Funds to which this agreement requires contributions any delinquent contributions that resulted from the violations. The Joint Trades Board or Arbitrator shall be able also to provide any other appropriate remedies, whether provided by law or this agreement. The Union shall enforce a decision of the Joint Trade Board or Arbitrator under this Article only through arbitral, Judicial, or governmental (for example, the National Labor Relations board) channels.

(e) If, after an Employer has violated this Article, the Union and/or the Trustees of one or more Joint Trust Funds to which this agreement requires contributions institute legal action to enforce an award by an Arbitrator or the Joint Trade Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants' and/or attorneys fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation that have resulted from such legal action. This section does not affect other remedies, whether provided by law or this Article, that may be available to the Union and/or the Joint Trust Funds.

(f) Employees covered by this Agreement shall have the right to respect any legal primary picket line validly established by any bona fide labor organization, and the Union party to this Agreement has the right to withdraw employees covered by this Agreement whenever the Employer party to the Agreement is involved in a legitimate primary labor dispute with any bona fide labor organization.

<u>Section 3</u> The Employer, the Union and employees agree that it will continue to be their policy that no discrimination shall be exercised because of race, color, religion, national origin, sex or age as provided in applicable Federal, State or Local laws. Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his acts as such officer of the Union nor shall there be any discrimination against any employee because of Union membership or activities.

## ARTICLE IX

## PAY DAY - NOTICES TO UNION EMPLOYMENT

**Section 1** Each Employer shall maintain a weekly pay day which shall not be later than 5:00 P.M. on Friday nor more than the seventh day after the end of the Employer's weekly payroll period, at which time all employees shall be paid in full for all work performed during the preceding work week.

**Section 2** In the event that an employee is discharged, he shall on the day of such discharge be paid in full wages to and including the day of discharge, such payment to be available to him not later than 5:00 P.M. on the day of such discharge.

**Section 3** Any employee who is laid off can request and shall receive from the company or foreman a written reply stating why he was laid off.

## ARTICLE X

## APPRENTICES

**Section 1** The rules and regulations governing apprentices shall be in accordance with the Duluth Area Painter and Decorators Apprenticeship standards revised and approved by the Bureau of Apprenticeship, United States Department of Labor, shall be binding on the parties hereto and considered a part of this Agreement.

**Section 2** (a) Every Employer, who is a party to this Agreement and who employs an average of five (5) journeymen during six (6) months of a twelve month period, agrees to employ one apprentice. Additional apprentices may be granted to any Employer upon proper application to the Local Painters Joint Apprenticeship Committee.

   (b) All apprentices are to be bound by a written contract of indenture for a term of three (3) years to the Employer, or the Joint Apprenticeship Training Committee, the terms of which indenture shall be prescribed by the Local Painters Joint Apprenticeship Committee and shall require that the Employer provide reasonably continuous employment, defined by the Local Painters Joint Apprenticeship Committee, for the term of the indenture.

**Section 3** No apprentice shall be permitted to take charge of any job, nor shall any apprentice be permitted to work on any job, unless there is at least one journeyman employed at the same job, except in the final year of his apprenticeship.

Section 2  It is agreed that all Employers not otherwise required to pay contributions under the Minnesota Unemployment Compensation Act, and regardless of the number of men employed shall voluntarily elect to become subject thereto and liable for the payment of contributions thereunder.

Section 3  On each pay day, the Employer shall deliver to employees a statement showing the amount withheld for Federal Social Security and Withholding Tax, State Withholding Tax, as well as amount withheld for other fringe benefits where applicable.

## ARTICLE XII

## MINNESOTA STATE JOINT TRADE BOARD
## LOCAL JOINT TRADE BOARD

Section 1  The Parties shall establish and maintain a Joint Trade Board composed of six members, three appointed by the Union and three appointed by the Employer. Four members, two appointed by each party, shall constitute a quorum. Decisions shall be made by majority vote, provided that Union appointees and Employer appointees shall have equal voting strength with respect to such vote. Members of the Joint Trade Board shall choose a Chairman and Secretary, to serve such terms as may be agreed upon by the board, provided that one such officer shall be a Union appointee and one an Employer appointee.

Section 2  The Joint Trade Board is empowered to hear and decide all grievances and disputes which arise between the parties as to the interpretation or application of this Agreement; to award or assess remedies, damages and penalties for violations of this Agreement; to issue interpretative rulings or other rules and regulations as it deems necessary to give force and effect to the purpose and intent of this Agreement; investigate all grievances and disputes submitted to it, including the conduct of audits of Employer records; to recommend amendments to or changes in this Agreement, but only upon request of both parties; to appoint such persons or committees as may be necessary to aid the Board in the performance of its duties.

Section 3  All grievances and disputes shall be submitted to the Secretary in written form, with copy furnished to the opposing party.

Section 4  The Joint Trade Board shall meet regularly at least once a month, but special meetings may be called by the Chairman or Secretary when a prompt hearing and decision is required in any given dispute. Alternate Chairman from Labor to Management yearly.

Section 2  (a) The Minnesota Painting and Wallcovering Employers Association shall furnish the Painters' Union with a complete roster of the members of the Association and the record of Unemployment Insurance Number for each member.

(b) The Union shall furnish a complete roster of all journeymen contractors, independent contractors, and members of the Minnesota Painting and Wallcovering Employers Association along with Unemployment Insurance Numbers for each Contractor, to the Local Joint Trade Board.

Section 3 (a) Any employee covered herein who contracts work must sign this Agreement and, if he discontinues contracting and takes a job as a journeyman, he shall not be allowed to contract again for a period of twelve (12) months.

(b) No Contractors shall loan journeymen from one shop to another unless wages are paid according to the Agreement.

Section 4  Any individuals, firm, co-partnership, self employed contractor or corporation signed to this Agreement shall post and have continuously in effect during the term of this Agreement, a bond in the amount of ten thousand dollars ($10,000) unless he has deposited ten thousand dollars ($10,000) in cash in a joint account with the Local Union and the Joint Trade Board (account may be in an interest account, interest to Contractor) to cover the payment of wages and contributions to the Minnesota Painting and Decorating Apprenticeship Training Trust as required by Section 1 of Article IV, and payments required to be paid to the Health and Welfare Fund, Vacation Fund, the Pension Fund, including Dues Check-Off and any other fringe benefits required by this Agreement. In specific cases, the Joint Trades Board will have the authority to require additional bonding from any Employer, but not to exceed twenty thousand dollars ($20,000).

Section 5  If any part of this Agreement is in violation with present or future State or Federal Laws, such portions of the Agreement are to be deleted.

Section 6  Any Employer of members of Local Union #106 must be signatory to this Agreement.

Section 7  If any other Employer shall receive more favorable conditions compared to those within the collective bargaining Agreement, then this Agreement shall be automatically amended to include such modified and more favorable conditions.

Section 8  A 10% penalty shall be levied on all delinquent wages. A grace period of one pay period shall be observed after regular pay day.

(e) <u>Wage Increase Effective May 1, 2000</u>
   1.20 to all Classifications
   Allocated out of this; .10 cents Pension, .10 cents Annuity, .50 cents Vacation

(f) <u>Wage Increase Effective May 1, 2001</u>
   1.20 to all Classifications
   Allocated out of this; .10 cents Pension, .10 cents Annuity, .50 cents Vacation

(g) <u>Wage Increase Effective May 1, 2002</u>
   1.25 to all Classifications
   Allocated out of this; .10 cents Pension, .10 cents Annuity

(h) <u>Wage Increase Effective May 1, 2003</u>
   1.25 to all Classifications
   Allocated out of this; .10 cents Pension, .10 cents Annuity

Union agrees to divert, at the minimum .10 cents per year to either the Health and Welfare or Pension/Annuity or both.

<u>Section 2</u> (a) Tapers to have all hand tools and stilts.

(b) Tapers' helpers (sanders) to be paid at 70% of taping scale and do all forms of sanding, and cleaning related to all types of drywall work.

<u>Section 3</u> All increases granted during the term of this Agreement shall be allocated at the discretion of the Union to either wages, fringe benefits or administrative dues check-off, prior to the effective date of each increase.

<u>Section 4</u> (a) Subsistence or expenses to be paid on new work only. A fifty (50) mile free zone - from Lake Avenue, and Superior Street in Duluth, Carpenters Hall in Virginia, the parking lot at the Memorial Building in Hibbing, and the Court House in Grand Rapids, Minnesota - beyond that, 51 to 70 miles will be $17.00 and 71 miles on out will be $26.00 per day as of May 1, 1999. The following subsistence increases are effective as follows;

   May 1, 2000    $18.00    51-70 miles    $27.00    71 miles on out
   May 1, 2001    $19.00    51-70 miles    $28.00    71 miles on out
   May 1, 2002    $20.00    51-70 miles    $29.00    71 miles on out
   May 1, 2003    $21.00    51-70 miles    $30.00    71 miles on out

(b) Repaint and old work will be paid at $1.50 per hour over scale with a 50 miles free zone.

Section 2  When a signatory Employer performs a job within the jurisdiction of a Union affiliated with the Brotherhood of Painters other than the Union signatory hereto and the By-Laws of that other Union contain a provision for administrative dues or business agent "assessment", the Employer shall check-off from the wages of employees covered by this agreement and employed on that job administrative dues or business agent "assessment" in the amount stated in that other Union's By-Laws, and shall remit said amount to the other Union.  In that event, that other Union shall be acting as agent of the signatory Union for the purpose of policing and administering this Agreement.  In performing the Check-off, the procedure specified in Section 1 (a-c) will be followed, except that it shall be the responsibility of said other Union to notify the Employer in writing of the amount of administrative dues or business agent "assessment" specified in its By-Laws, and to submit to the Employer a copy of the by-Laws or the applicable By-Law provision.  When the signatory Employer performs a job within the jurisdiction of a Union affiliated with the Brotherhood of Painters other than the union signatory hereto, and the By-laws of that other Union contains no provision for administrative dues or business agent "assessment", the Employer shall continue to be bound by Section one (1).

Section 3  The obligations of the Employer under Section (1) and (2) shall apply only as to employees who have voluntarily signed a valid dues deduction authorization card.

Section 4  At the time of the employment of any employee, the Employer will submit to each such employee for his voluntary signature a dues deduction authorization card in duplicate, one copy of which is retained by the Employer and the other returned to the Union, the form to be supplied such Employer by the Union.

Section 5  On or before the 10th day of each month, the Employer will submit to the Union a list of all employees covered by the agreement who have not signed a dues deduction authorization card, together with the number of hours worked by each such employee during the month previous.

Section 6  There shall be an Administrative Dues Check-Off providing for two percent (2%) of the Gross Wage per hour effective June 1, 1977.  There will also be a fifteen (15) cents per hour deduction paid into the State conference of Painters as a Check-Off.

<u>Section 2</u>  Payment of the Health and Welfare, fringe benefits to be provided pursuant to this Agreement (unless otherwise designated) shall be made to the Duluth Building Trades Welfare Funds, (which was established by Agreement dated September 11, 1953), as amended from time to time. Such payments shall be made on or before the 15th day of the month following that in which the obligation to make said payment occurred.

<u>Section 3</u>  By execution of this agreement, each Employer hereby agrees: (1) to make said payments in a timely manner, as above provided, and (2) to pay penalties, interest, audit and accounting or legal fees which may be required by the Trust Agreement (or pursuant to rules adopted by its Trustees) in connection with any failure to make timely payments or in connection with any failure to provide information regarding the identity of employees in a particular trade classification, their wages, hours worked and similar information germane to the operation and purpose of said Trust.

<u>Section 4</u>  The remedies and penalties available to and chargeable by the Welfare Fund shall not be exclusive but shall be supplemental to those of the parties hereto.

### ARTICLE XVIII
### THE I.B.P.A.T UNION AND INDUSTRY NATIONAL PENSION FUND AND ANNUITY PLAN

The only Agreement between the Employers and Union parties to this Agreement regarding pension or retirement for employees covered by this Agreement is as follows:

<u>Section 1</u>  (a) Commencing with the fifth day of July 1973, and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the I.B.P.A.T. Union and Industry National Pension Fund/Annuity Plan for each employee covered by this Agreement, as follows:

(b) For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of three dollars and eighty cents ($3.80) to the above-named Pension/Annuity Fund.

(c) For the purpose of this article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(d) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this agreement. This includes, but is not limited to, apprentices, helpers, trainees and probationary employees.

~22~

<u>Section 3</u>  Selection of applicants for referral to jobs shall be on non-discriminatory basis and shall not be based on, or in any way affected by Union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements. Such selection shall be made on the following basis: The Union shall maintain a registry of applicants for employment. If the hiring hall list has been exhausted, the Employer can recruit from other sources after forty-eight (48) hours. Such men are to be governed by the Agreement.

<u>Section 4</u>  The provisions of this Article shall be posted in those places where notices to employees and applicants for employment are customarily posted.

<u>Section 5</u>  The Union agrees to hold the Minnesota Painting and Wallcovering Employers Association and its members harmless and to indemnify them for any damages on the above.

K0585   106   Keith Rule Painting

## ARTICLE XX

## DURATION OF AGREEMENT

This Agreement shall remain in full force and effect between the parties hereto from May 1, 1999 to April 30, 2004 and shall be automatically renewed from year to year thereafter, unless either party serves written notice of at least sixty (60) days prior to expiration of contract, stating desire to change some parts of this Agreement. Copy of proposed changes must be submitted to the other party hereto.

IN WITNESS WHEREOF the parties have hereunto set their hands and seals this ___9___ day of ___Sept._____, 19_99_.

Minnesota Painting and
Wallcovering Employers
Association

Brotherhood of Painters and
Allied Trades Local Union
No. 106 Duluth, Minnesota

_____
Executive Director

_____
Representative

_____
Painting Contractor

~25~

_____          _____
Name of Employer (please print)                    Business Phone

_____
Address of Company Shop

_____
Liability Ins. Co. & Policy No.                    Bond Co. & Certificate No.

_____
State Unemployment No.                             Workmans comp. & Policy No.

Is Employer a Sole Proprietorship_____ Partnership_____
or Corporation_____

If partnership, give names of partners. If corporation, give names of officers and state of incorporation.

_____
  Name (print)            Residence                      Phone

President
Partner _____
  Name (print)            Residence                      Phone

Vice President
Partner _____
  Name (print)            Residence                      Phone

Secretary-Treasurer
Partner _____
  Name (print)            Residence                      Phone

_____
State of Incorporation

_____
Signed: Local Union #106                                              Title

_____
Signed: For Employer                                                  Title

~26~