## SETTLEMENT AGREEMENT
### Dated: October 7, 2003

**THIS SETTLEMENT AGREEMENT** ("Settlement Agreement" or "Agreement") is between the International Painters and Allied Trades Industry Pension Fund ("Fund") and Keith Rule, Inc. a/k/a Keith Rule, Incorporated ("Company" or "Rule") who mutually agree to be bound by all terms and conditions hereof.

**WHEREAS**, the Fund asserted claims against Rule under federal law for delinquent contributions, liquidated damages, interest and attorneys' fees and costs due and owing to the Fund by Rule; and

**WHEREAS**, according to an audit of Rule's records covering the period May 1, 1999 through April 30, 2002, as well as Fund's contribution delinquency estimates for the period May through June 2002, a period in which Rule did not submit the contractually required remittance reports, returned check fees, interest, liquidated damages, late charges, audit fees and attorneys' fees and costs, the amount due the Fund as of September 16, 2002 was $30,082.78; and

**WHEREAS**, Fund filed an action in the United States District Court for the District of Columbia, captioned <u>International Painters and Allied Trades Industry Pension Fund v. Keith Rule, Inc. a/k/a Keith Rule, Incorporated</u>, Civil Action No. 02-672 (JDB) in which it asserted the aforementioned claims (the "Civil Action"); and

**WHEREAS**, the Court entered an Order and Judgment in favor of Fund and against Rule on October 7, 2002 in the amount of $30,082.78; and

**WHEREAS**, Rule has subsequently failed to remitted all outstanding contributions due and owing the Fund including the difference between the Fund's estimates for May and June 2002 and the true amount due based upon remittance reports



| | |
|---|---|
| Attorney's Fees and Costs<br>(through October 7, 2003) | 7,512.79 |

**Total Due**                                                $70,979.15
                                                            ("Total Debt")

2.    **Settlement Payment**. Rule shall pay Seventy Thousand, Nine Hundred

Seventy Nine Dollars and Fifteen Cents ($70,979.15) plus interest amortized at 4 percent

(4%) per annum compounded daily in fifty-one (51) equal monthly installments of

$1,241.91 with a final fifty-second (52nd) balloon payment in the amount of $12,643.06,

as set forth on the Payment Schedule attached as Exhibit 1.  The first monthly installment

shall be paid on or before October 15, 2003.  The fifty-one (51) remaining installments,

including the final balloon payment of Twelve Thousand, Six Hundred Forty Three

Dollars and Six Cents ($12,643.06), shall be paid on or before the fifteenth (15th)

calendar day of each successive month through January 1, 2008. All payments required

by this Agreement shall be executed through an automatic withdrawal and wire transfer

to Fund.  Rule agrees to execute all documents necessary to effectuate this method of

payment.   Provided, however, that if Rule makes each and every one of the fifty-one (51)

equal monthly installments of $1,241.91 in a timely manner and there are no Events of

Default by Rule under the terms of this Settlement Agreement, the Fund shall excuse and

waive the final balloon payment of Twelve Thousand, Six Hundred Forty Three Dollars

and Six Cents ($12,643.06) referred to in this Paragraph 2.


3.    **Collateral Security**.   In order to secure payment of the Total Debt, plus

all contributions and other sums (including liquidated damages, interest and attorneys'

fees and costs) which become due and owing to the Fund for periods on and after

execution of this Agreement, Greg Rule agrees to execute the Guaranty & Suretyship

presently in effect and as they may hereafter be modified or amended and hereby waives

all notice thereof and ratifies all actions already taken or to be taken by the Trustees of the

Fund within the scope of their authority.

6.    **Late Payment Fees and Interest**.    For each payment not received by the

Fund on or before the date the payment is due, Rule shall pay a late fee of One Hundred

Dollars ($100.00) upon demand by Fund in addition to any charges or costs levied upon

the Fund as a result of insufficient funds being available for the wire transfer provided for

in paragraph 2 above.  Rule's failure to remit payments of any late fee and any charges or

costs assessed, to the Fund within seven (7) days of such demand shall be deemed an

event of default hereunder. Additionally, Fund shall be entitled to collect interest on any

late payment at the rate of twelve percent (12%) per annum, for the period dating from

the date the payment is due through the date of actual payment.

7.    **Prepayment**. At any time before December 15, 2007, Rule shall have the

right to pay in a lump-sum payment to the Fund the then full outstanding principal

balance due to the Fund without penalty.  In the event of such prepayment, the Fund will

recalculate the principal balance to eliminate any unearned interest.  Rule shall give the

Fund seven (7) days advance notice of its intent to make such a prepayment.

8.    **Events of Default**.    The occurrence of any of the following event

("Event of Default") shall constitute a default under the terms of this Settlement

Agreement:

(a)    Rule submits even one untimely contribution to the Fund beginning with the contribution for September 2003;

(b)    Rule submits even one untimely remittance report to the Fund beginning with the remittance report for September 2003;

(c)    Any payment due under this Agreement is not paid within

to initiate all appropriate proceedings as it, in its sole and exclusive discretion, deems appropriate to collect the then full outstanding balance of the Total Debt plus all other amounts the Fund is entitled to under the terms of this Agreement.

10.    **Notice.** The Fund's obligation to provide Rule with written notice of the occurrence of an event of default pursuant to the terms of this settlement agreement may be satisfied by mailing a copy of such notice by regular mail to Greg Rule, CEO, Keith Rule, Inc. a/k/a Keith Rule, Incorporated, 4425 Second Avenue, East, Hibbing, Minnesota 55746.

11.    **Late or Partial Payments**.    The Fund's acceptance of one or more late or partial payments shall not constitute a waiver of its right to demand that payment be on time and in full for all subsequent payments.  Failure or delay by the Fund to enforce this Agreement shall not constitute a waiver of the Fund's right to collect all sums due under this Agreement, any collective bargaining agreement, or Sections 502(g)(2) and 515 of ERISA.  Additionally, Rule waives formal presentment, demand, protest, notice of protest, and other formalities that could be required of the Fund in the event of a default by Rule.

12.    **Proof of Damages**.    An affidavit executed by counsel for the Fund, by Thomas C. Montemore, Assistant to the Fund Administrator, or by any other authorized representative of the Fund, shall constitute conclusive proof of a claim for and the amount of any sums due to the Fund as delinquent contributions, interest, liquidated damages, attorney's fees, and costs, in the event that judicial enforcement of this Agreement becomes necessary.

13.    **Actions To Collect Contributions**.  Rule's failure to pay contributions in

Satisfaction of Mortgage for the Mortgage given by Rule as part of this Agreement.

16.    **Certification**.  Rule and the Fund hereby certify that they have read the terms of this Settlement Agreement, that they have had an opportunity to discuss it with their attorneys and that they understand its terms and effects.

17.    **Fund's Signature Authority**.  The Fund hereby represents, warrants and covenants that this Settlement Agreement has been duly approved by their respective Boards of Trustees or other governing body in accordance with the appropriate plan or other governing documents, that the persons signing on behalf of the Fund is authorized by the appropriate Plan, Trust Agreement or other governing documents to enter into this Settlement Agreement on behalf of the Fund, and that this Settlement Agreement is a valid agreement binding upon the Fund, its Boards of Trustees or other governing body and their beneficiaries.

18.    **Rule's Signature Authority**.  Rule represents, warrants and covenants that the person signing on its behalf is its authorized agent, that the signature written above the name and office of such person is such person's genuine signature, and that such person is authorized by the appropriate corporate documents to enter into this Settlement Agreement on Rule's behalf without approval of its Board of Directors and that this Settlement Agreement is a valid agreement binding upon Rule.

19.    **Survival of Representations and Warranties**.  All material representations, warranties, covenants and agreements made by the parties in this Settlement Agreement or in any instrument, document, agreement or writing furnished pursuant hereto or made in connection with the negotiation, execution or performance of this Settlement Agreement, shall survive the execution of this Settlement Agreement.

**WHEREFORE, INTENDING TO BE LEGALLY BOUND HEREBY**, the parties hereto having read all the foregoing, understanding the same and agreeing to all of the provisions contained herein, set their hands and seals hereto as of the date first above written.

International Painters and Allied Trades
Industry Pension Fund,

Attest: _____    BY: _____
Thomas C. Montemore,
Assistant to the Fund Administrator

Dated: _10/28/03_

Keith Rule, Inc. a/k/a Keith Rule,

Incorporated

_____    BY: _____
Corporate Secretary    Greg Rule, CEO

Place Corporate
Seal Here

Dated: _Oct 7 2003_

## GUARANTY AND SURETYSHIP AGREEMENT

### October 7, 2003

THIS GUARANTY AND SURETYSHIP AGREEMENT is made this 7th day of October, 2003 by Greg Rule ("Surety") in favor of the International Painters and Allied Trades Industry Pension Fund ("Fund"), to secure obligations of Keith Rule, Inc. a/k/a

Agreement, or under any renewals, extensions or modifications thereof such obligations hereinafter are referred to individually as "Obligation" and collectively as "Obligations."

2.    If any Obligation is not paid or performed by Company punctually when due, including, without limitation, any Obligation due by acceleration, Surety will, upon Fund's demand, immediately pay or perform such Obligation.  Surety will pay to Fund, upon demand, all costs and expenses including, without limitation, reasonable attorneys' fees, which may be incurred by Fund in the collection or enforcement of the Obligations or of Surety's obligations under this Guaranty.

3.    Surety hereby waives notice of acceptance of this Guaranty and any notice of default by Company with respect to the Obligations, and consent and agree that Fund may at any time, and from time to time, in its sole discretion (a) extend or change the time of payment, and/or the manner, place or terms of payment, and/or the time, manner, place or terms of performance of all or any part of the Obligations, (b) settle or compromise with Company or others liable thereunder all or any part of the Obligations, and (c) take or refrain from taking such action as Fund may, in its sole discretion, deem to be in its best interest with respect to the Obligations, all in such manner and upon such terms as Fund may deem fit and without notice to or further assent from Surety, who hereby agrees to be and remain bound upon this Guaranty for the balance of the Obligations, notwithstanding any such extension, change, settlement, compromise, surrender, release, renewal, extension or other action.

4.    Surety agrees that no promise, representation, agreement, condition or covenant has been made relating to this Guaranty other than those contained herein, and that no modification of the terms hereof shall be binding on Fund unless in writing signed

Agreement, provided that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the Obligations is rescinded or must otherwise be returned by Fund upon the bankruptcy, reorganization or similar proceeding of relief of Company under state or federal law, all as though such payment had not been made.

9.     If more than one Surety shall execute this Guaranty, then this Guaranty shall be the joint and several obligation of such Sureties, and shall not be revoked or impaired as to one by the death or bankruptcy of any other or by the revocation or release from any obligations hereunder of any Surety.

10.     This Guaranty is an instrument of suretyship and not merely a guaranty. Should Company at any time be in default under any obligation beyond any applicable notice and cure period, if any, Fund may proceed directly and immediately under this Guaranty against the Surety to the full extent of the amount or performance with respect to such obligation, without first being required to proceed against Company or any other person or entity, or against any other security for Company's obligations to Fund. The guarantee and surety contained in this Guaranty is absolute and unconditional, primary, direct and immediate, and shall be valid and binding upon Surety regardless of any invalidity, defect or unenforceability of or in the Agreement, any action or inaction by Fund, or any other circumstance which might otherwise constitute a defense available to, or a discharge or release of, Company, or Surety, by operation of law.

11.     If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, such provision shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or

Compound Period  ........ : Daily

| | | |
|---|---|---|
| Nominal Annual Rate ....: | 4.000 | % |
| Effective Annual Rate ... : | 4.081 | % |
| Periodic Rate ..................: | 0.0110 | % |
| Daily Rate ......................: | 0.01096 | % |

## CASH FLOW DATA

| | Event | Start Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 10/01/2003 | 58,336.09 | 1 | | |
| 2 | Payment | 10/15/2003 | 1,241.91 | 1 | | |
| 3 | Payment | 11/01/2003 | 1,241.91 | 50 | Monthly | 12/01/2007 |

## AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 10/01/2003 | | | | 58,336.09 |
| 1 | 10/15/2003 | 1,241.91 | 89.57 | 1,152.34 | 57,183.75 |
| 2 | 11/01/2003 | 1,241.91 | 106.63 | 1,135.28 | 56,048.47 |
| 3 | 12/01/2003 | 1,241.91 | 184.56 | 1,057.35 | 54,991.12 |
| 2003 | Totals | 3,725.73 | 380.76 | 3,344.97 | |
| | | | | | |
| 4 | 01/01/2004 | 1,241.91 | 187.13 | 1,054.78 | 53,936.34 |
| 5 | 02/01/2004 | 1,241.91 | 183.54 | 1,058.37 | 52,877.97 |
| 6 | 03/01/2004 | 1,241.91 | 168.31 | 1,073.60 | 51,804.37 |
| 7 | 04/01/2004 | 1,241.91 | 176.28 | 1,065.63 | 50,738.74 |
| 8 | 05/01/2004 | 1,241.91 | 167.08 | 1,074.83 | 49,663.91 |
| 9 | 06/01/2004 | 1,241.91 | 169.00 | 1,072.91 | 48,591.00 |
| 10 | 07/01/2004 | 1,241.91 | 160.01 | 1,081.90 | 47,509.10 |
| 11 | 08/01/2004 | 1,241.91 | 161.67 | 1,080.24 | 46,428.86 |
| 12 | 09/01/2004 | 1,241.91 | 157.99 | 1,083.92 | 45,344.94 |
| 13 | 10/01/2004 | 1,241.91 | 149.32 | 1,092.59 | 44,252.35 |
| 14 | 11/01/2004 | 1,241.91 | 150.58 | 1,091.33 | 43,161.02 |
| 15 | 12/01/2004 | 1,241.91 | 142.12 | 1,099.79 | 42,061.23 |
| 2004 | Totals | 14,902.92 | 1,973.03 | 12,929.89 | |
| | | | | | |
| 16 | 01/01/2005 | 1,241.91 | 143.13 | 1,098.78 | 40,962.45 |
| 17 | 02/01/2005 | 1,241.91 | 139.39 | 1,102.52 | 39,859.93 |
| 18 | 03/01/2005 | 1,241.91 | 122.49 | 1,119.42 | 38,740.51 |
| 19 | 04/01/2005 | 1,241.91 | 131.83 | 1,110.08 | 37,630.43 |
| 20 | 05/01/2005 | 1,241.91 | 123.91 | 1,118.00 | 36,512.43 |
| 21 | 06/01/2005 | 1,241.91 | 124.25 | 1,117.66 | 35,394.77 |
| 22 | 07/01/2005 | 1,241.91 | 116.55 | 1,125.36 | 34,269.41 |
| 23 | 08/01/2005 | 1,241.91 | 116.61 | 1,125.30 | 33,144.11 |
| 24 | 09/01/2005 | 1,241.91 | 112.78 | 1,129.13 | 32,014.98 |
| 25 | 10/01/2005 | 1,241.91 | 105.42 | 1,136.49 | 30,878.49 |
| 26 | 11/01/2005 | 1,241.91 | 105.07 | 1,136.84 | 29,741.65 |
| 27 | 12/01/2005 | 1,241.91 | 97.94 | 1,143.97 | 28,597.68 |
| 2005 | Totals | 14,902.92 | 1,439.37 | 13,463.55 | |

EXHIBIT i

Minnesota Uniform Conveyancing Blanks (1786)

Miller/Davis Co., St. Paul, MN 651-642-1988

By Corporation or Partnership

(reserved for mortgage registry tax payment data)

**MORTGAGE REGISTRY TAX DUE HEREON:** _____

(reserved for recording data)

THIS INDENTURE, Made this _____ *October 7, 200³* _____

(Date)

between _Keith Rule, Inc._____

a _____ corporation _____ under the laws of _Minnesota_____

Mortgagor (whether one or more), and _International Painters and Allied Trades Industry Pension Fund__

Mortgagee (whether one or more)

WITNESSETH, That the Mortgagor, in consideration of the sum of _Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15)_____ DOLLARS,. to Mortgagor in hand paid by Mortgagee, the receipt whereof is hereby acknowledged, does hereby convey unto Mortgagee, forever, real property in _____St. Louis_____ County, Minnesota, described as follows:

Lot 4, except the westerly 150 feet thereof, Block 1, WOODLAND.

together with all hereditaments and appurtenances belonging thereto (the Property).

TO HAVE AND TO HOLD THE SAME, to Mortgagee forever. The Mortgagor covenants with Mortgagee as follows: That Mortgagor is lawfully seized of the Property and has good right to convey the same; that the Property is free from all encumbrances, except as follows:

that Mortgagee shall quietly enjoy and possess the same; and that Mortgagor will Warrant and Defend the title to the same against all lawful claims not hereinbefore specifically excepted.

PROVIDED, NEVERTHELESS, That if Mortgagor shall pay to Mortgagee the sum of _Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15)_____

DOLLARS, according to the terms of a promissory note of even date herewith (the Note), the final payment being due and payable on _____December 1, 2001_____with interest at the rate provided in the Note, and shall repay to the Mortgagee, at the times and with interest as specified, all sums advanced in protecting the lien of this Mortgage, in payment of taxes on the Property and assessments payable therewith, insurance premiums covering buildings thereon, principal or interest on any prior liens, expenses and attorney's fees herein provided for and sums advanced for any other purpose authorized herein, and shall keep and perform all the covenants and agreements herein contained, then this Mortgage shall be null and void, and shall be released at the Mortgagor's expense.

WARNING: UNAUTHORIZED COPYING OF THIS FORM PROHIBITED.

EXHIBIT 3

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF ST. LOUIS                          SIXTH JUDICIAL DISTRICT

Court File No.

International Union of Painters & Allied Trades
Industry Pension Fund,

       Plaintiff,

vs.                                               **CONFESSION OF JUDGMENT**

Keith Rule, Inc., a/k/a Keith Rule Incorporated,
and Greg Rule, individually,

       Defendants.

---

Greg Rule hereby confesses judgment in the above entitled action in the amount of

**$70,979.15**, and authorizes entry of judgment against Greg Rule in that sum. This Confession of

Judgment is for a debt justly due and arises out of the following factual situation.

The International Painters and Allied Trades Industry Pension Fund ("Fund") asserted claims against

Keith Rule, Inc. under federal law for delinquent contributions, liquidated damages, interest and

attorneys' fees and costs due and owing to the Fund by Rule. According to an audit of Keith Rule,

Inc. records covering the period May 1, 1999 through April 30, 2002, as well as Fund's contribution

delinquency estimates for the period May through June 2002, a period in which Keith Rule, Ind. did

not submit the contractually required remittance reports, returned check fees, interest, liquidated

damages, late charges, audit fees and attorneys' fees and costs, the amount due the Fund as of

September 16, 2002 was $30,082.78. The Fund filed an action in the United States District Court

for the District of Columbia, captioned <u>International Painters and Allied Trades Industry Pension</u>

<u>Fund v. Keith Rule, Inc., a/k/a Keith Rule Incorporated,</u> Civil Action No. 02-672 (JDB) in which

it asserted the aforementioned claims (the "Civil Action"), and the Court entered an Order and

Judgment in favor of Fund and against Rule on October 7, 2002 in the amount of $30,082.78. This

EXHIBIT 4

I, Greg Rule have read the foregoing statement and know the contents of it. I understand I am a defendant in the above entitled action. To my knowledge the above statement is true, except to those matters which are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the _____ day of October, 2003, at Duluth, Minnesota.

_____
Greg Rule

Subscribed and sworn to before me this
_____ day of _____, 2003.

_____
Notary Public

aforementioned claims (the "Civil Action"), and the Court entered an Order and Judgment in favor

of Fund and against Rule on October 7, 2002 in the amount of $30,082.78. This judgment was

docketed in St. Louis County (Minnesota) District Court in Case No. **69-C7-03-600526.**

Rule has subsequently failed to remitted all outstanding contributions due and owing the

Fund including the difference between the Fund's estimates for May and June 2002 and the true

amount due based upon remittance reports for those months prepared by Rule but submitted to the

Fund late from the date of the Judgment to the date of this Confession in the amount of an additional

$26,711.40 before interest, liquidated damages and attorneys' fees and costs.

Rule agrees that it owes the Fund a grand total of $70,979.15, which is broken down as

follows, with this judgment representing **$39,982.25**, which is the total amount due less the

$30,996.90 already contained in the earlier judgment now docketed in St. Louis County District

Court:

| | |
|---|---|
| **Past Due Contributions** | $46,497.30 |
| Accrued Interest (through September 30, 2003) | 2,749.21 |
| Liquidated Damages | 12,643.06 |
| Late Charges | 470.69 |
| Returned Check Fee | 25.00 |
| Audit Costs | 1,081.10 |
| Attorney's Fees and Costs (through October 6, 2003) | 7,512.79 |
| **Total Due** | **$70,979.15** ("Total Debt") |
| **Less Amounts contained in judgment in St. Louis County District Court No. 69-C7-03-600526 as of 7-25-03** | **$30,996.90** |
| **Total Due in this Judgment** | **$39,982.25** |

## SETTLEMENT AGREEMENT
### Dated: October 7, 2003

**THIS SETTLEMENT AGREEMENT** ("Settlement Agreement" or "Agreement") is between the International Painters and Allied Trades Industry Pension Fund ("Fund") and Keith Rule, Inc. a/k/a Keith Rule, Incorporated ("Company" or "Rule") who mutually agree to be bound by all terms and conditions hereof.

**WHEREAS**, the Fund asserted claims against Rule under federal law for delinquent contributions, liquidated damages, interest and attorneys' fees and costs due and owing to the Fund by Rule; and

**WHEREAS**, according to an audit of Rule's records covering the period May 1, 1999 through April 30, 2002, as well as Fund's contribution delinquency estimates for the period May through June 2002, a period in which Rule did not submit the contractually required remittance reports, returned check fees, interest, liquidated damages, late charges, audit fees and attorneys' fees and costs, the amount due the Fund as of September 16, 2002 was $30,082.78; and

**WHEREAS**, Fund filed an action in the United States District Court for the District of Columbia, captioned <u>International Painters and Allied Trades Industry Pension Fund v. Keith Rule, Inc. a/k/a Keith Rule, Incorporated</u>, Civil Action No. 02-672 (JDB) in which it asserted the aforementioned claims (the "Civil Action"); and

**WHEREAS**, the Court entered an Order and Judgment in favor of Fund and against Rule on October 7, 2002 in the amount of $30,082.78; and

**WHEREAS**, Rule has subsequently failed to remitted all outstanding contributions due and owing the Fund including the difference between the Fund's estimates for May and June 2002 and the true amount due based upon remittance reports

| Attorney's Fees and Costs (through October 7, 2003) | 7,512.79 |
|---|---|
| **Total Due** | **$70,979.15** ("Total Debt") |

2.    **Settlement Payment**. Rule shall pay Seventy Thousand, Nine Hundred Seventy Nine Dollars and Fifteen Cents ($70,979.15) plus interest amortized at 4 percent (4%) per annum compounded daily in fifty-one (51) equal monthly installments of $1,241.91 with a final fifty-second (52nd) balloon payment in the amount of $12,643.06, as set forth on the Payment Schedule attached as Exhibit 1.  The first monthly installment shall be paid on or before October 15, 2003.  The fifty-one (51) remaining installments, including the final balloon payment of Twelve Thousand, Six Hundred Forty Three Dollars and Six Cents ($12,643.06), shall be paid on or before the fifteenth (15th) calendar day of each successive month through January 1, 2008. All payments required by this Agreement shall be executed through an automatic withdrawal and wire transfer to Fund.  Rule agrees to execute all documents necessary to effectuate this method of payment.   Provided, however, that if Rule makes each and every one of the fifty-one (51) equal monthly installments of $1,241.91 in a timely manner and there are no Events of Default by Rule under the terms of this Settlement Agreement, the Fund shall excuse and waive the final balloon payment of Twelve Thousand, Six Hundred Forty Three Dollars and Six Cents ($12,643.06) referred to in this Paragraph 2.

3.    **Collateral Security**.  In order to secure payment of the Total Debt, plus all contributions and other sums (including liquidated damages, interest and attorneys' fees and costs) which become due and owing to the Fund for periods on and after execution of this Agreement, Greg Rule agrees to execute the Guaranty & Suretyship

presently in effect and as they may hereafter be modified or amended and hereby waives all notice thereof and ratifies all actions already taken or to be taken by the Trustees of the Fund within the scope of their authority.

6.    **Late Payment Fees and Interest**.  For each payment not received by the Fund on or before the date the payment is due, Rule shall pay a late fee of One Hundred Dollars ($100.00) upon demand by Fund in addition to any charges or costs levied upon the Fund as a result of insufficient funds being available for the wire transfer provided for in paragraph 2 above.  Rule's failure to remit payments of any late fee and any charges or costs assessed, to the Fund within seven (7) days of such demand shall be deemed an event of default hereunder. Additionally, Fund shall be entitled to collect interest on any late payment at the rate of twelve percent (12%) per annum, for the period dating from the date the payment is due through the date of actual payment.

7.    **Prepayment**. At any time before December 15, 2007, Rule shall have the right to pay in a lump-sum payment to the Fund the then full outstanding principal balance due to the Fund without penalty.  In the event of such prepayment, the Fund will recalculate the principal balance to eliminate any unearned interest.  Rule shall give the Fund seven (7) days advance notice of its intent to make such a prepayment.

8.    **Events of Default**.    The occurrence of any of the following event ("Event of Default") shall constitute a default under the terms of this Settlement Agreement:

> (a)    Rule submits even one untimely contribution to the Fund beginning with the contribution for September 2003;

> (b)    Rule submits even one untimely remittance report to the Fund beginning with the remittance report for September 2003;

> (c)    Any payment due under this Agreement is not paid within

to initiate all appropriate proceedings as it, in its sole and exclusive discretion, deems appropriate to collect the then full outstanding balance of the Total Debt plus all other amounts the Fund is entitled to under the terms of this Agreement.

10.    **Notice.** The Fund's obligation to provide Rule with written notice of the occurrence of an event of default pursuant to the terms of this settlement agreement may be satisfied by mailing a copy of such notice by regular mail to Greg Rule, CEO, Keith Rule, Inc. a/k/a Keith Rule, Incorporated, 4425 Second Avenue, East, Hibbing, Minnesota 55746.

11.    **Late or Partial Payments**.    The Fund's acceptance of one or more late or partial payments shall not constitute a waiver of its right to demand that payment be on time and in full for all subsequent payments.  Failure or delay by the Fund to enforce this Agreement shall not constitute a waiver of the Fund's right to collect all sums due under this Agreement, any collective bargaining agreement, or Sections 502(g)(2) and 515 of ERISA.  Additionally, Rule waives formal presentment, demand, protest, notice of protest, and other formalities that could be required of the Fund in the event of a default by Rule.

12.    **Proof of Damages**.    An affidavit executed by counsel for the Fund, by Thomas C. Montemore, Assistant to the Fund Administrator, or by any other authorized representative of the Fund, shall constitute conclusive proof of a claim for and the amount of any sums due to the Fund as delinquent contributions, interest, liquidated damages, attorney's fees, and costs, in the event that judicial enforcement of this Agreement becomes necessary.

13.    **Actions To Collect Contributions**.  Rule's failure to pay contributions in

Satisfaction of Mortgage for the Mortgage given by Rule as part of this Agreement.

16. **Certification**. Rule and the Fund hereby certify that they have read the terms of this Settlement Agreement, that they have had an opportunity to discuss it with their attorneys and that they understand its terms and effects.

17. **Fund's Signature Authority**. The Fund hereby represents, warrants and covenants that this Settlement Agreement has been duly approved by their respective Boards of Trustees or other governing body in accordance with the appropriate plan or other governing documents, that the persons signing on behalf of the Fund is authorized by the appropriate Plan, Trust Agreement or other governing documents to enter into this Settlement Agreement on behalf of the Fund, and that this Settlement Agreement is a valid agreement binding upon the Fund, its Boards of Trustees or other governing body and their beneficiaries.

18. **Rule's Signature Authority**. Rule represents, warrants and covenants that the person signing on its behalf is its authorized agent, that the signature written above the name and office of such person is such person's genuine signature, and that such person is authorized by the appropriate corporate documents to enter into this Settlement Agreement on Rule's behalf without approval of its Board of Directors and that this Settlement Agreement is a valid agreement binding upon Rule.

19. **Survival of Representations and Warranties**. All material representations, warranties, covenants and agreements made by the parties in this Settlement Agreement or in any instrument, document, agreement or writing furnished pursuant hereto or made in connection with the negotiation, execution or performance of this Settlement Agreement, shall survive the execution of this Settlement Agreement.

**WHEREFORE, INTENDING TO BE LEGALLY BOUND HEREBY**, the parties hereto having read all the foregoing, understanding the same and agreeing to all of the provisions contained herein, set their hands and seals hereto as of the date first above written.

International Painters and Allied Trades
Industry Pension Fund,

Attest:

BY: Thomas C. Montemore
Thomas C. Montemore,
Assistant to the Fund Administrator

Dated: 10/28/03

Keith Rule, Inc. a/k/a Keith Rule,

Incorporated

Corporate Secretary

BY: _____
Greg Rule, CEO

Place Corporate
Seal Here

Dated: Oct 7 2003

## GUARANTY AND SURETYSHIP AGREEMENT

### October 7, 2003

THIS GUARANTY AND SURETYSHIP AGREEMENT is made this 7th day of October, 2003 by Greg Rule ("Surety") in favor of the International Painters and Allied Trades Industry Pension Fund ("Fund"), to secure obligations of Keith Rule, Inc. a/k/a

Agreement, or under any renewals, extensions or modifications thereof such obligations hereinafter are referred to individually as "Obligation" and collectively as "Obligations."

      2.      If any Obligation is not paid or performed by Company punctually when due, including, without limitation, any Obligation due by acceleration, Surety will, upon Fund's demand, immediately pay or perform such Obligation. Surety will pay to Fund, upon demand, all costs and expenses including, without limitation, reasonable attorneys' fees, which may be incurred by Fund in the collection or enforcement of the Obligations or of Surety's obligations under this Guaranty.

      3.      Surety hereby waives notice of acceptance of this Guaranty and any notice of default by Company with respect to the Obligations, and consent and agree that Fund may at any time, and from time to time, in its sole discretion (a) extend or change the time of payment, and/or the manner, place or terms of payment, and/or the time, manner, place or terms of performance of all or any part of the Obligations, (b) settle or compromise with Company or others liable thereunder all or any part of the Obligations, and (c) take or refrain from taking such action as Fund may, in its sole discretion, deem to be in its best interest with respect to the Obligations, all in such manner and upon such terms as Fund may deem fit and without notice to or further assent from Surety, who hereby agrees to be and remain bound upon this Guaranty for the balance of the Obligations, notwithstanding any such extension, change, settlement, compromise, surrender, release, renewal, extension or other action.

      4.      Surety agrees that no promise, representation, agreement, condition or covenant has been made relating to this Guaranty other than those contained herein, and that no modification of the terms hereof shall be binding on Fund unless in writing signed

Agreement, provided that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the Obligations is rescinded or must otherwise be returned by Fund upon the bankruptcy, reorganization or similar proceeding of relief of Company under state or federal law, all as though such payment had not been made.

9.    If more than one Surety shall execute this Guaranty, then this Guaranty shall be the joint and several obligation of such Sureties, and shall not be revoked or impaired as to one by the death or bankruptcy of any other or by the revocation or release from any obligations hereunder of any Surety.

10.    This Guaranty is an instrument of suretyship and not merely a guaranty. Should Company at any time be in default under any obligation beyond any applicable notice and cure period, if any, Fund may proceed directly and immediately under this Guaranty against the Surety to the full extent of the amount or performance with respect to such obligation, without first being required to proceed against Company or any other person or entity, or against any other security for Company's obligations to Fund.  The guarantee and surety contained in this Guaranty is absolute and unconditional, primary, direct and immediate, and shall be valid and binding upon Surety regardless of any invalidity, defect or unenforceability of or in the Agreement, any action or inaction by Fund, or any other circumstance which might otherwise constitute a defense available to, or a discharge or release of, Company, or Surety, by operation of law.

11.    If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, such provision shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or

Compound Period  ........ : Daily

| | | |
|---|---|---|
| Nominal Annual Rate ....: | 4.000 | % |
| Effective Annual Rate ... : | 4.081 | % |
| Periodic Rate ...................: | 0.0110 | % |
| Daily Rate ...................... : | 0.01096 | % |

CASH FLOW DATA

| | Event | Start Date | Amount | Number | Period | End Date |
|---|---|---|---|---|---|---|
| 1 | Loan | 10/01/2003 | 58,336.09 | 1 | | |
| 2 | Payment | 10/15/2003 | 1,241.91 | 1 | | |
| 3 | Payment | 11/01/2003 | 1,241.91 | 50 | Monthly | 12/01/2007 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 10/01/2003 | | | | 58,336.09 |
| 1 | 10/15/2003 | 1,241.91 | 89.57 | 1,152.34 | 57,183.75 |
| 2 | 11/01/2003 | 1,241.91 | 106.63 | 1,135.28 | 56,048.47 |
| 3 | 12/01/2003 | 1,241.91 | 184.56 | 1,057.35 | 54,991.12 |
| 2003 | Totals | 3,725.73 | 380.76 | 3,344.97 | |
| | | | | | |
| 4 | 01/01/2004 | 1,241.91 | 187.13 | 1,054.78 | 53,936.34 |
| 5 | 02/01/2004 | 1,241.91 | 183.54 | 1,058.37 | 52,877.97 |
| 6 | 03/01/2004 | 1,241.91 | 168.31 | 1,073.60 | 51,804.37 |
| 7 | 04/01/2004 | 1,241.91 | 176.28 | 1,065.63 | 50,738.74 |
| 8 | 05/01/2004 | 1,241.91 | 167.08 | 1,074.83 | 49,663.91 |
| 9 | 06/01/2004 | 1,241.91 | 169.00 | 1,072.91 | 48,591.00 |
| 10 | 07/01/2004 | 1,241.91 | 160.01 | 1,081.90 | 47,509.10 |
| 11 | 08/01/2004 | 1,241.91 | 161.67 | 1,080.24 | 46,428.86 |
| 12 | 09/01/2004 | 1,241.91 | 157.99 | 1,083.92 | 45,344.94 |
| 13 | 10/01/2004 | 1,241.91 | 149.32 | 1,092.59 | 44,252.35 |
| 14 | 11/01/2004 | 1,241.91 | 150.58 | 1,091.33 | 43,161.02 |
| 15 | 12/01/2004 | 1,241.91 | 142.12 | 1,099.79 | 42,061.23 |
| 2004 | Totals | 14,902.92 | 1,973.03 | 12,929.89 | |
| | | | | | |
| 16 | 01/01/2005 | 1,241.91 | 143.13 | 1,098.78 | 40,962.45 |
| 17 | 02/01/2005 | 1,241.91 | 139.39 | 1,102.52 | 39,859.93 |
| 18 | 03/01/2005 | 1,241.91 | 122.49 | 1,119.42 | 38,740.51 |
| 19 | 04/01/2005 | 1,241.91 | 131.83 | 1,110.08 | 37,630.43 |
| 20 | 05/01/2005 | 1,241.91 | 123.91 | 1,118.00 | 36,512.43 |
| 21 | 06/01/2005 | 1,241.91 | 124.25 | 1,117.66 | 35,394.77 |
| 22 | 07/01/2005 | 1,241.91 | 116.55 | 1,125.36 | 34,269.41 |
| 23 | 08/01/2005 | 1,241.91 | 116.61 | 1,125.30 | 33,144.11 |
| 24 | 09/01/2005 | 1,241.91 | 112.78 | 1,129.13 | 32,014.98 |
| 25 | 10/01/2005 | 1,241.91 | 105.42 | 1,136.49 | 30,878.49 |
| 26 | 11/01/2005 | 1,241.91 | 105.07 | 1,136.84 | 29,741.65 |
| 27 | 12/01/2005 | 1,241.91 | 97.94 | 1,143.97 | 28,597.68 |
| 2005 | Totals | 14,902.92 | 1,439.37 | 13,463.55 | |

EXHIBIT   1

**DIIDOCS** 2002™    43M--Mortgage    Minnesota Uniform Conveyancing Blanks (1986)    Miller/Davis Co. ® St. Paul, MN 651-642-1988

By Corporation or Partnership

(reserved for mortgage registry tax payment data)

**MORTGAGE REGISTRY TAX DUE HEREON:**

(reserved for recording data)

THIS INDENTURE, Made this _____ *October 7, 2003* _____

(Date)

between _Keith Rule, Inc._

a _____ corporation _____ under the laws of _Minnesota_

Mortgagor (whether one or more), and _International Painters and Allied Trades Industry Pension Fund_

Mortgagee (whether one or more)

WITNESSETH, That the Mortgagor, in consideration of the sum of __Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15)__ _____ DOLLARS, to Mortgagor in hand paid by Mortgagee, the receipt whereof is hereby acknowledged, does hereby convey unto Mortgagee, forever, real property in _____ St. Louis _____ County, Minnesota, described as follows:

Lot 4, except the westerly 150 feet thereof, Block 1, WOODLAND.

together with all hereditaments and appurtenances belonging thereto (the Property).

TO HAVE AND TO HOLD THE SAME, to Mortgagee forever. The Mortgagor covenants with Mortgagee as follows: That Mortgagor is lawfully seized of the Property and has good right to convey the same; that the Property is free from all encumbrances, except as follows:

that Mortgagee shall quietly enjoy and possess the same; and that Mortgagor will Warrant and Defend the title to the same against all lawful claims not hereinbefore specifically excepted.

PROVIDED, NEVERTHELESS, That if Mortgagor shall pay to Mortgagee the sum of __Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15)__

DOLLARS, according to the terms of a promissory note of even date herewith (the Note), the final payment being due and payable on _____ December 1, 2001 _____ with interest at the rate provided in the Note, and shall repay to the Mortgagee, at the times and with interest as specified, all sums advanced in protecting the lien of this Mortgage, in payment of taxes on the Property and assessments payable therewith, insurance premiums covering buildings thereon, principal or interest on any prior liens, expenses and attorney's fees herein provided for and sums advanced for any other purpose authorized herein, and shall keep and perform all the covenants and agreements herein contained, then this Mortgage shall be null and void, and shall be released at the Mortgagor's expense.

**WARNING: UNAUTHORIZED COPYING OF THIS FORM PROHIBITED.**

*EXHIBIT 3*

STATE OF MINNESOTA

COUNTY OF ST. LOUIS

DISTRICT COURT

SIXTH JUDICIAL DISTRICT

Court File No.

International Union of Painters & Allied Trades
Industry Pension Fund,

        Plaintiff,

   vs.

Keith Rule, Inc., a/k/a Keith Rule Incorporated,
and Greg Rule, individually,

        Defendants.

**CONFESSION OF JUDGMENT**

Greg Rule hereby confesses judgment in the above entitled action in the amount of **$70,979.15,** and authorizes entry of judgment against Greg Rule in that sum. This Confession of Judgment is for a debt justly due and arises out of the following factual situation.

The International Painters and Allied Trades Industry Pension Fund ("Fund") asserted claims against Keith Rule, Inc. under federal law for delinquent contributions, liquidated damages, interest and attorneys' fees and costs due and owing to the Fund by Rule. According to an audit of Keith Rule, Inc. records covering the period May 1, 1999 through April 30, 2002, as well as Fund's contribution delinquency estimates for the period May through June 2002, a period in which Keith Rule, Ind. did not submit the contractually required remittance reports, returned check fees, interest, liquidated damages, late charges, audit fees and attorneys' fees and costs, the amount due the Fund as of September 16, 2002 was $30,082.78. The Fund filed an action in the United States District Court for the District of Columbia, captioned <u>International Painters and Allied Trades Industry Pension Fund v. Keith Rule, Inc., a/k/a Keith Rule Incorporated,</u> Civil Action No. 02-672 (JDB) in which it asserted the aforementioned claims (the "Civil Action"), and the Court entered an Order and Judgment in favor of Fund and against Rule on October 7, 2002 in the amount of $30,082.78. This

<u>EXHIBIT</u> 4

I, Greg Rule have read the foregoing statement and know the contents of it. I understand I am a defendant in the above entitled action. To my knowledge the above statement is true, except to those matters which are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the _____ day of October, 2003, at Duluth, Minnesota.

_____
Greg Rule

Subscribed and sworn to before me this
_____ day of _____, 2003.

_____
Notary Public

3

KEITH RULE, INC.


By:_____
Greg Rule


Subscribed and sworn to before me this
_____ day of _____, 2003.


_____
Notary Public


## VERIFICATION

     I, Greg Rule, as CEO of Keith Rule, Inc. have read the foregoing statement and know the contents of it. I understand that Keith Rule, Inc. is a defendant in the above entitled action. To my knowledge the above statement is true, except to those matters which are alleged on information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on the _____ day of October, 2003, at Duluth, Minnesota.

KEITH RULE, INC.


_____
by Greg Rule, its CEO


Subscribed and sworn to before me this
_____ day of _____, 2003.


_____
Notary Public


3

# *International Painters and Allied Trades Industry Pension Fund*
## Electronic Transfer Authorization

Please type or print the following information:

| Customer Information | |
|---|---|
| Business Name | KEITH RULE INC |
| Address | 4425 2ND AVE E |
| | HIBBING, MN. 55746 |
| Contact Name | GREG RULE |
| Telephone # | 219-263-9997 |

| Your Account Information *(The account from which the money will be deducted)* | |
|---|---|
| Bank Name | U.S. BANK |
| Bank Contact & Telephone # | LINDA BOIS |
| Account # | 1408102368848 |
| Routing/Transit # | 091000022 |
| Type of Account | CHECKING |

| Transfer Information | |
|---|---|
| How much is to be transferred? | 1,241.97 |
| Date of First Transfer | OCT 15 2003 |
| Date of Last Transfer | 12-1-07 |
| How often will transfer occur? | MThly |

### Customer Signature
By signing below, you are authorizing the IUPAT Industry Pension Fund to make the transfer(s) as shown above, for the time period and occurrence(s) as stated above.

| | |
|---|---|
| *(signature)* | 10-7-03 |
| Signature | Date |

If you have any questions regarding this authorization, please contact our office at 1750 New York Avenue, NW, Washington, DC 20006, (202) 783-4884.

IUPAT Industry Pension Fund Use Only

| Approved by: | Date: |
|---|---|

Miller/Davis Co. ® St. Paul, MN 651-642-1988

AND THE MORTGAGOR covenants with the Mortgagee as follows:

1. to pay the principal sum of money and interest as specified in the Note;
2. to pay all taxes and assessments now due or that may hereafter become liens against the Property before penalty attaches thereto;
3. to keep all buildings, improvements and fixtures now or later located on a part of the Property insured against loss by fire, extended coverage perils, vandalism, malicious mischief and, if applicable, steam boiler explosion, for at least the amount of _____ full insurable value _____

   at all times while any amount remains unpaid under this Mortgage. If any of the buildings, improvements or fixtures are located in a federally designated flood prone area, and if flood insurance is available for that area, Mortgagor shall procure and maintain flood insurance in amounts reasonably satisfactory to Mortgagee. Each insurance policy shall contain a loss payable clause in favor of Mortgagee affording all rights and privileges customarily provided under the so-called standard mortgage clause. In the event of damage to the Property by fire or other casualty, Mortgagor shall promptly give notice of such damage to Mortgagee and the insurance company. The insurance shall be issued by an insurance company or companies licensed to do business in the State of Minnesota and acceptable to Mortgagee. The insurance policies shall provide for not less than ten days written notice to Mortgagee before cancellation, non-renewal, termination, or change in coverage, and Mortgagor shall deliver to Mortgagee a duplicate original or certificate of such insurance policies.

4. to pay, when due, both principal and interest of all prior liens or encumbrances, if any, and to keep the Property free and clear of all other prior liens or encumbrances;
5. to commit or permit no waste on the Property and to keep it in good repair;
6. to complete forthwith any improvements which may hereafter be under course of construction on the Property; and
7. to pay any other expenses and attorney's fees incurred by Mortgagee by reason of litigation with any third party for the protection of the lien of this Mortgage.

In case of failure to pay said taxes and assessments, prior liens or encumbrances, expenses and attorney's fees as above specified, or to insure said buildings, improvements, and fixtures and deliver the policies as aforesaid, the Mortgagee may pay such taxes, assessments, prior liens, expenses and attorney's fees and interest thereon, or obtain such insurance, and the sums so paid shall bear interest from the date of such payment at the same rate set forth in the Note, and shall be impressed as an additional lien upon the Property and be immediately due and payable from Mortgagor to Mortgagee and this Mortgage shall from date thereof secure the repayment of such advances with interest.

In case of default in any of the foregoing covenants, Mortgagor confers upon the Mortgagee the option of declaring the unpaid balance of the Note and the interest accrued thereon, together with all sums advanced hereunder, immediately due and payable without notice, and hereby authorizes and empowers Mortgagee to foreclose this Mortgage by judicial proceedings or to sell the Property at public auction and convey the same to the purchaser in fee simple in accordance with the statute, and out of the moneys arising from such sale to retain all sums secured hereby, with interest and all legal costs and charges of such foreclosure and the maximum attorney's fee permitted by law, which costs, charges and fees Mortgagor agrees to pay.

The terms of this Mortgage shall run with the Property and bind the parties hereto and their successors in interest. _____

_____

IN TESTIMONY WHEREOF, Mortgagor has hereunto set its hand the day and year first above written.

MORTGAGOR

_____

KEITH RULE, INC.

By _____
Greg Rule

Its CEO _____

By _____

Its _____

STATE OF MINNESOTA
COUNTY OF ST. LOUIS _____ } ss.

This instrument was acknowledged before me on _____

(Date)

by _____ Greg Rule _____ xxnd _____
the _____ CEO _____ xxnd _____
of Keith Rule, Inc. _____

a _____ corporation _____ under the laws of _____ Minnesota _____
on behalf of the _____ corporation _____

THIS INSTRUMENT WAS DRAFTED BY (NAME AND ADDRESS):

Aaron R. Bransky
Brown, Andrew & Signorelli, P.A.
300 Alworth Building
306 West Superior Street
Duluth, MN 55802
218/722-1764; 218/722-6137-fax
226610

_____
SIGNATURE OF NOTARY PUBLIC OR OTHER OFFICIAL

NOTARIAL STAMP OR SEAL (OR OTHER TITLE OR RANK):

AARON BRANSKY
NOTARY PUBLIC - MINNESOTA
My commission expires 1-31-2005

FAILURE TO RECORD OR FILE THIS MORTGAGE
MAY AFFECT PRIORITY OF THIS MORTGAGE

**MiDocs™** 43M—Mortgage    Minnesota Uniform Conveyancing Blanks (1986)    Miller/Davis Co. ® St. Paul, MN 651-642-1988

By Corporation or Partnership

(reserved for mortgage registry tax payment data)

(reserved for recording data)

**MORTGAGE REGISTRY TAX DUE HEREON:**

THIS INDENTURE, Made this ____ October 7, 2003 ____

(Date)

between _Keith Rule, Inc._

a ____ corporation ____ under the laws of _Minnesota_

Mortgagor (whether one or more), and _International Painters and Allied Trades Industry Pension Fund_

Mortgagee (whether one or more)

WITNESSETH, That the Mortgagor, in consideration of the sum of ____ Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15) ____ DOLLARS, to Mortgagor in hand paid by Mortgagee, the receipt whereof is hereby acknowledged, does hereby convey unto Mortgagee, forever, real property in ____ St. Louis ____ County, Minnesota, described as follows:

Lot 4, except the westerly 150 feet thereof, Block 1, WOODLAND.

together with all hereditaments and appurtenances belonging thereto (the Property).

TO HAVE AND TO HOLD THE SAME, to Mortgagee forever. The Mortgagor covenants with Mortgagee as follows: That Mortgagor is lawfully seized of the Property and has good right to convey the same; that the Property is free from all encumbrances, except as follows:

that Mortgagee shall quietly enjoy and possess the same; and that Mortgagor will Warrant and Defend the title to the same against all lawful claims not hereinbefore specifically excepted.

PROVIDED, NEVERTHELESS, That if Mortgagor shall pay to Mortgagee the sum of ____ Seventy Thousand Nine Hundred Seventy-nine and 15/100ths ($70,979.15) ____

DOLLARS, according to the terms of a promissory note of even date herewith (the Note), the final payment being due and payable on ____ December 1, 2001 ____ with interest at the rate provided in the Note, and shall repay to the Mortgagee, at the times and with interest as specified, all sums advanced in protecting the lien of this Mortgage, in payment of taxes on the Property and assessments payable therewith, insurance premiums covering buildings thereon, principal or interest on any prior liens, expenses and attorney's fees herein provided for and sums advanced for any other purpose authorized herein, and shall keep and perform all the covenants and agreements herein contained, then this Mortgage shall be null and void, and shall be released at the Mortgagor's expense.

WARNING: UNAUTHORIZED COPYING OF THIS FORM PROHIBITED.