



# JENNINGS SIGMOND

## ATTORNEYS AT LAW



**JENNINGS SIGMOND, P.C.**
THE PENN MUTUAL TOWERS
16TH FLOOR
510 WALNUT STREET
INDEPENDENCE SQUARE
PHILADELPHIA, PA 19106-3683
215-922-6700
FAX 215-922-3524

Jessica L. Tortella
Direct Dial: (215) 351-0669
E-Mail Address: jtortella@jslex.com

Member: PA & NJ Bars

**JENNINGS SIGMOND, P.C.**
ONE GREENTREE CENTRE
SUITE 201
MARLTON, NJ 08053
856-667-6950
FAX 856-667-6982

August 11, 2006

Mr. Greg Rule
Keith Rule, Inc.
a/k/a Keith Rule, Incorporated
4425 Second Avenue, East
Hibbing, MN  55746

> **RE:   IUPAT Industry Pension Fund -- and –**
> **Keith Rule, Inc. a/k/a Keith Rule Incorporated and Greg Rule**
> **<u>Settlement Agreement – August 11, 2006</u>**

Dear Mr. Rule:

     This letter constitutes the agreement to settle the contribution delinquency of Keith Rule, Inc. a/k/a Keith Rule, Incorporated ("Company") and Greg Rule ("Individual" and together with Company, "Obligors") to the IUPAT Industry Pension Fund ("Pension Fund" or "Fund"). The terms of the settlement are as follows:

1.    Obligors agree they owe the Pension Fund the following:

| | |
|---|---:|
| Contributions[1]: | $ 53,632.63 |
| Interest[2]: | $ 9,831.73 |
| Late Fees: | $ 517.16 |
| Returned Check Fees: | $ 75.00 |
| Audit Costs: | $ 1,081.10 |
| Liquidated Damages: | $ 23,442.87 |
| Real Estate Broker Fees: | $ 500.00 |
| Property Taxes: | $ 637.96 |
| Property Insurance: | $ 1,321.00 |
| Liens[3]: | $ 4,500.00 |
| Attorneys' Fees and Costs[4]: | $ 35,899.82 |
| **TOTAL:** | **$ 131,439.27** |

---

[1] Delinquent contributions are due for the periods May 2003 - August 2003 and May 2004 – June 2006.

[2] Interest is calculated through July 31, 2006.

[3] The Pension Fund settled liens on the Foreclosed Property in an effort to clear the title prior to selling it back to the Greg Rule including: $1,000 to the State of Minnesota; $1,500 to Andrens Inc.; and $2,000 to United Building Center.

[4] Accrued through August 11, 2006.

170144-1





EXHIBIT

Greg Rule/ Keith Rule, Inc.
Settlement Agreement
August 11, 2006
Page 2

The total amount due the Pension Fund is $131,439.27 ("Total Debt").

  2.  The Pension Fund agrees to *conditionally* waive $33,863.76, representing the interest, late fees, returned check fees and liquidated damages, referred to in ¶1 if Obligors do not breach or violate the terms of this settlement agreement with respect to their obligations to the Pension Fund, thereby leaving the principal amount due the Pension Fund at $97,575.51 ("Settlement Sum"). In the event Obligors fully and timely comply with the provisions of this settlement agreement and timely submit to the Pension Fund all remittance reports and contributions for hours worked or paid to its covered employees through and including January 2009, the Pension Fund shall accept the Settlement Sum as payment in full, waiving a total of $33,863.76 ("Waiver Amount") in interest, late fees, returned check fees and liquidated damages.  Absent compliance, Company shall owe the Pension Fund the Waiver Amount plus interest calculated at the rate of 8% compounded daily from August 1, 2006 to the date of actual payment.

  3.  On or about September 15, 2005, the Pension Fund foreclosed on property located at 4425 Second Avenue, East, Hibbing, MN 55746 ("Foreclosed Property").  The Foreclosed Property was pledged by the Obligors as collateral to secure an October 7, 2003 Settlement Agreement between the Obligors and the Pension Fund.  Obligors defaulted on the October 7, 2003 Settlement Agreement and the Pension Fund foreclosed on the property.  Obligors failed to redeem during the six month redemption period; therefore, title, on the Foreclosed Property, passed to the Pension Fund on or about March 15, 2006.  Greg Rule purchased the Foreclosed Property from the Pension Fund for the sum of $60,000 on August 2, 2006.

  4.  After applying and apportioning the payment from the Foreclosed Property of $60,000 made by the Individual on August 2, 2006, a balance of $37,575.51 ("Balance") to the Pension Fund.

  5.  Obligors agree to pay the Balance plus interest at the rate of 8% per annum compounded daily in accordance with the amortization schedule attached as Exhibit 1 commencing August 15, 2006. All monthly payments shall be made by wire transfer and the Obligors agree to complete and execute the forms attached as Exhibit 2 in order to arrange for the wire transfers.

  6.  Commencing with its contributory obligation for July 2006, Obligors agree to submit all remittance reports and contributions by the 20th day of the month following the month in which the hours were worked (e.g. November contributions by December 20th).

  7.  As further security for Obligors' full compliance with all terms of this settlement, Greg Rule will execute the Guaranty and Suretyship Agreement ("Guaranty") attached as Exhibit 3.

Greg Rule/ Keith Rule, Inc.
Settlement Agreement
August 11, 2006
Page 3

8.      In order to further secure payment of the aggregate Total Debt owed, Company
will grant the Pension Fund a security interest in all of its accounts receivables, contract rights,
instruments, chattel paper, general intangibles and work in progress, whether performed or
unperformed and whether now existing or hereafter created or acquired including the proceeds
thereof and will execute the Security Agreement attached as Exhibit 4 and, if necessary, any
financing statement needed to perfect the security interest.

9.      The amounts set forth in ¶1 are based on remittance reports prepared by Company
and submitted to the Pension Fund. The Pension Fund retains the right to conduct an audit of all
relevant periods, including the time periods covered by this settlement. Company, its owners,
officers, agents, servants, employees and all persons acting on it's behalf or in conjunction with
it, shall submit to such audits by certified public accountants selected by the Pension Fund and
shall produce all books and records requested by the auditor and/or the Trustees of the Pension
Fund including, but not limited to, payroll, wage, general ledger, cash disbursement records,
compensation insurance audits, and any other pertinent records deemed necessary for the
purpose of ascertaining and/or verifying payments and/or liabilities to the Pension Fund.
Obligors shall pay to the Pension Fund any additional amounts found owing, plus the costs of the
audit and all such other amounts as set forth in the collective bargaining agreement, the trust
agreements and rules and regulations of the Pension Fund, ERISA and applicable law.

10.     In the event Obligors breach any of the terms of this settlement agreement, the
Pension Fund will be entitled to take such action as they reasonably deem appropriate to collect
all amounts owed to them by Obligors, including initiation of garnishment proceedings on the
judgment, foreclosure on their security interest and the Guaranty and commencement of
appropriate collection actions. The amounts recoverable by the Pension Fund shall be the Total
Debt less payments made to the date of default and amortized to principal and interest and, in
addition, the Pension Fund shall be entitled to recover all attorneys' fees and costs and related
collection costs it incurs as a result of a breach of this agreement by Obligors that is not timely
cured and such other amounts as they may be entitled to under the Security Agreement and
relevant law.  A breach of this settlement agreement shall occur in the event:

      (a)    Obligors fail to timely remit any installment payment due under the
payment schedule attached as Exhibit 1 and/or fails to maintain a
sufficient balance in their bank account(s) so as to allow for a complete
wire transfer of any installment payment.

      (b)    Obligors submit even one untimely contribution to the Pension Fund.

      (c)    Obligors submit even one untimely remittance report to the
Pension Fund.

Greg Rule/ Keith Rule, Inc.
Settlement Agreement
August 11, 2006
Page 4

    (d)    Any material representation, statement, or warranty made by Obligors in this settlement agreement or any document executed in connection with this settlement agreement shall prove to have been incorrect in any material respect when made.

    (e)    A receiver, trustee or liquidator shall be appointed with respect to all or a substantial portion of the assets of Obligors.

    (f)    Obligors shall be unable, or admits in writing its inability, to pay its debts as they become due, other than the debt which is the subject of this settlement agreement.

    (g)    Obligors makes a general assignment for the benefit of creditors, becomes subject (voluntarily or involuntarily) to any state bankruptcy or insolvency proceeding or becomes a debtor in a proceeding under Title 11, U.S.C., or makes or files an arrangement with creditors in order to take advantage of any insolvency law.

    (h)    Obligors fail to cooperate in the conduct of the audit provided for in ¶9 above.

    (i)    Obligors fail to comply with any term or provision in the Security Agreement.

Upon the occurrence of any one or more of the foregoing events, unless cured within ten (10) days after Obligors receives written notice of the event of default from the Pension Fund or their counsel with respect to events described in ¶¶10(a), (b), (c), (d), (f), (h) and (i), or within forty-five (45) days for events described in ¶¶10(e) and 11(g) by the dismissal of such proceedings, the Pension Fund shall have the right, but not the obligation, to immediately initiate all actions they, in their sole and exclusive discretion, deem appropriate to collect the then full outstanding balance they are owed plus all such other amounts to which they may be entitled. The failure of the Pension Fund to exercise any of their rights upon the occurrence of an event of default shall not waive or prevent exercise of those rights upon a later default. In connection with any proceeding described in ¶¶10(e) and 11(g) above, in addition to any other rights they may have, the Pension Fund shall be entitled to file claims for the then full outstanding principal balance (together with accrued interest) of the Total Debt as set forth in ¶1.

    11.    The Pension Fund agrees not to commence any action to enforce their rights as secured creditors or any other rights they may have under law to recover the amounts owed by Obligors as long as Obligors are in compliance with all terms of this Settlement Agreement and

Greg Rule/ Keith Rule, Inc.
Settlement Agreement
August 11, 2006
Page 5

the Security Agreement.

12.    If Obligors comply with all terms of this Settlement Agreement and all related settlement documents, the Pension Fund agrees to a permanent waiver of the amounts referred to in ¶2 above.

13.    The obligation of the Pension Fund to provide Obligors with written notice of the occurrence of an event of default pursuant to the terms of this settlement agreement may be satisfied by mailing the notice by facsimile and/or first class mail to Greg Rule/ Keith Rule, Inc. a/k/a Keith Rule, Incorporated, 4425 Second Avenue, East, Hibbing, MN 55746, fax: (218) 263-6635.  Notices to the Pension Fund shall be sent to the Pension Fund by first class mail addressed to Thomas Montemore, IUPAT Industry Pension Fund, 1750 New York Ave., N.W., Ste. 501, Washington, DC 20006.  Copies of any notices to the Pension Fund shall be faxed or mailed by first class mail to Jessica L. Tortella, Esquire, Jennings Sigmond, The Penn Mutual Towers, 16th Floor, 510 Walnut Street, Philadelphia, PA 19160-3683, fax: 215-922-3524.

Please indicate Company and your agreement to the terms of this settlement by having this Settlement Agreement, the Security Agreement and the Electronic Wire Transfer Form signed and, if requested on the document, attested to by the appropriate corporate officers.  The corporate seal should be affixed to each document. Finally, you must complete and sign the Personal Guaranty and Suretyship Agreement.  Once all documents have been fully executed return them to me on or before *__Thursday, August 17, 2006.__*.

If you should have any questions, please do not hesitate to call.

Sincerely,

JESSICA L. TORTELLA

JLT
Enclosures
ptintf.23289.c
keith rule
cc:    Thomas C. Montemore

170144.1

Greg Rule/ Keith Rule, Inc.
Settlement Agreement
August 11, 2006
Page 6

### WE HEREBY ACCEPT THIS SETTLEMENT AGREEMENT

IUPAT Industry Pension Fund

Keith Rule, Inc.
a/k/a Keith Rule, Incorporated

By: _____
    Thomas Montemore, On behalf
    of the IUPAT Industry Pension Fund

By: _____
    Greg Rule, President and On behalf
    of Keith Rule, Inc.

By:_____
    Greg Rule, Individually

Sworn and subscribed to before me this      day of            , 2006.

_____
Notary Public

My commission expires:

170144.1



08/11/2006  2:04:19 PM  Page 1

Keith Rule Inc. Settlement Agreement Payment Schedule

Compound Period ......... :  Daily

Nominal Annual Rate .... :  8.000 %

CASH FLOW DATA

| Event | Date | Amount | Number | Period | End Date |
|-------|------|--------|--------|--------|----------|
| 1  Loan | 08/01/2006 | 37,575.51 | 1 | | |
| 2  Payment | 08/15/2006 | 1,381.73 | 30 | Monthly | 01/15/2009 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|------|---------|----------|-----------|---------|
| Loan | 08/01/2006 | | | | 37,575.51 |
| 1 | 08/15/2006 | 1,381.73 | 115.46 | 1,266.27 | 36,309.24 |
| 2 | 09/15/2006 | 1,381.73 | 247.52 | 1,134.21 | 35,175.03 |
| 3 | 10/15/2006 | 1,381.73 | 232.02 | 1,149.71 | 34,025.32 |
| 4 | 11/15/2006 | 1,381.73 | 231.95 | 1,149.78 | 32,875.54 |
| 5 | 12/15/2006 | 1,381.73 | 216.86 | 1,164.87 | 31,710.67 |
| 2006 Totals | | 6,908.65 | 1,043.81 | 5,864.84 | |
| 6 | 01/15/2007 | 1,381.73 | 216.17 | 1,165.56 | 30,545.11 |
| 7 | 02/15/2007 | 1,381.73 | 208.22 | 1,173.51 | 29,371.60 |
| 8 | 03/15/2007 | 1,381.73 | 180.79 | 1,200.94 | 28,170.66 |
| 9 | 04/15/2007 | 1,381.73 | 192.04 | 1,189.69 | 26,980.97 |
| 10 | 05/15/2007 | 1,381.73 | 177.97 | 1,203.76 | 25,777.21 |
| 11 | 06/15/2007 | 1,381.73 | 175.72 | 1,206.01 | 24,571.20 |
| 12 | 07/15/2007 | 1,381.73 | 162.08 | 1,219.65 | 23,351.55 |
| 13 | 08/15/2007 | 1,381.73 | 159.19 | 1,222.54 | 22,129.01 |
| 14 | 09/15/2007 | 1,381.73 | 150.85 | 1,230.88 | 20,898.13 |
| 15 | 10/15/2007 | 1,381.73 | 137.85 | 1,243.88 | 19,654.25 |
| 16 | 11/15/2007 | 1,381.73 | 133.98 | 1,247.75 | 18,406.50 |
| 17 | 12/15/2007 | 1,381.73 | 121.41 | 1,260.32 | 17,146.18 |
| 2007 Totals | | 16,580.76 | 2,016.27 | 14,564.49 | |
| 18 | 01/15/2008 | 1,381.73 | 116.88 | 1,264.85 | 15,881.33 |
| 19 | 02/15/2008 | 1,381.73 | 108.26 | 1,273.47 | 14,607.86 |
| 20 | 03/15/2008 | 1,381.73 | 93.14 | 1,288.59 | 13,319.27 |
| 21 | 04/15/2008 | 1,381.73 | 90.80 | 1,290.93 | 12,028.34 |
| 22 | 05/15/2008 | 1,381.73 | 79.34 | 1,302.39 | 10,725.95 |
| 23 | 06/15/2008 | 1,381.73 | 73.12 | 1,308.61 | 9,417.34 |
| 24 | 07/15/2008 | 1,381.73 | 62.12 | 1,319.61 | 8,097.73 |
| 25 | 08/15/2008 | 1,381.73 | 55.20 | 1,326.53 | 6,771.20 |
| 26 | 09/15/2008 | 1,381.73 | 46.16 | 1,335.57 | 5,435.63 |
| 27 | 10/15/2008 | 1,381.73 | 35.85 | 1,345.88 | 4,089.75 |
| 28 | 11/15/2008 | 1,381.73 | 27.88 | 1,353.85 | 2,735.90 |
| 29 | 12/15/2008 | 1,381.73 | 18.05 | 1,363.68 | 1,372.22 |
| 2008 Totals | | 16,580.76 | 806.80 | 15,773.96 | |

Keith Rule Inc. Settlement Agreement Payment Schedule

| Date | Payment | Interest | Principal | Balance |
|------|---------|----------|-----------|---------|
| 30  01/15/2009 | 1,381.73 | 9.51 | 1,372.22 | 0.00 |
| 2009 Totals | 1,381.73 | 9.51 | 1,372.22 | |
| | | | | |
| Grand Totals | 41,451.90 | 3,876.39 | 37,575.51 | |

Keith Rule Inc. Settlement Agreement Payment Schedule

Last interest amount increased by 0.16 due to rounding.





# *International Painters and Allied Trades Industry Pension Fund*

## **Electronic Transfer Authorization**

Please type or print the following information:

| Customer Information | |
|---|---|
| **Business Name** | Keith Rule, Inc. a/k/a Keith Rule Incorporated |
| **Address** | 4425 Second Avenue, East |
| | Hibbing, MN 55746 |
| **Contact Name** | Greg Rule |
| **Telephone #** | |
| *Your Account Information (The account from which the money will be deducted)* | |
| **Bank Name** | |
| **Bank Contact & Telephone #** | |
| **Account #** | |
| **Routing/Transit #** | |
| **Type of Account** | |
| *Transfer Information* | |
| **How much is to be transferred?** | $1,381.73 |
| **Date of First Transfer** | August 15, 2006 |
| **Date of Last Transfer** | January 15, 2009 |
| **How often will transfer occur?** | Once per month |
| *Customer Signature* | |

By signing below, you are authorizing the IUPAT Industry Pension Fund to make the transfer(s) as shown above, for the time period and occurrence(s) as stated above.

Signature                                        Date

If you have any questions regarding this authorization, please contact our office at 1750 New York Avenue, NW, Washington, DC 20006, (202) 783-4884.

IUPAT Industry Pension Fund Use Only

| Approved by: | Date: |
|---|---|

170144.1



## GUARANTY AND SURETYSHIP AGREEMENT

THIS GUARANTY AND SURETYSHIP AGREEMENT is made this 11th day of

August 2006 by Greg Rule ("Obligor" or "Guarantor") in favor of the International Union of

Painters and Allied Trades Industry Pension Fund (" Pension Fund"), to secure obligations of

Keith Rule, Inc. a/k/a Keith Rule, Incorporated.

WHEREAS, a Settlement Agreement ("Agreement") dated August 11, 2006 was entered

into by and among Keith Rule, Inc. a/k/a Keith Rule, Incorporated ("Company" together with

Guarantor, "Obligors"), Obligors and the Pension Fund to resolve the claims of the Pension Fund

for unpaid contributions, liquidated damages, interest, late fees, returned check fees, audit costs

and attorneys' fees and costs under the terms and conditions of the Company's collective

bargaining agreements with the Union and the Employee Retirement Income Security Act

(ERISA); and

WHEREAS, under the terms of the Agreement, the Obligors have agreed to provide the

Pension Fund with various forms of collateral in order to secure payment; and

WHEREAS, Obligors have agreed to execute and deliver this Guaranty and Suretyship

Agreement as part of that security;

NOW THEREFORE, it is hereby acknowledged and agreed, by and among the Pension

Fund and Obligors (collective "the Parties") as follows:

1.      In order to secure payment of all obligations of Company under the Agreement,

and the payment and performance of all other obligations of Company under the Agreement,

Guarantor hereby irrevocably and unconditionally guarantees to the Pension Fund, and becomes

surety to the Pension Fund for, the due and punctual payment and performance of all obligations

of Company, now existing or hereafter at any time or times incurred under the Agreement, or

170144.1

under any renewals, extensions or modifications thereof such obligations hereinafter are referred to individually as "Obligation" and collectively as "Obligations."

2.      If any Obligation is not paid or performed by Company punctually when due, including, without limitation, any Obligation due by acceleration, Guarantor will, upon Pension Fund's demand, immediately pay or perform such Obligation.  Guarantor will pay to the Pension Fund, upon demand, all costs and expenses including, without limitation, reasonable attorneys' fees, which may be incurred by Pension Fund in the collection or enforcement of the Obligations or of Guarantor's obligations under this Guaranty.

3.      Guarantor hereby waives notice of acceptance of this Guaranty and any notice of default by Company with respect to the Obligations, and consents and agrees that Pension Fund may at any time, and from time to time, in their sole discretion (a) extend or change the time of payment, and/or the manner, place or terms of payment, and/or the time, manner, place or terms of performance of all or any part of the Obligations, (b) settle or compromise with Company or others liable thereunder all or any part of the Obligations, and (c) take or refrain from taking such action as Pension Fund may, in their sole discretion, deem to be in their best interest with respect to the Obligations, all in such manner and upon such terms as Pension Fund may deem fit and without notice to or further assent from Guarantor, who hereby agrees to be and remain bound upon this Guaranty for the balance of the obligations, notwithstanding any such extension, change, settlement, compromise, surrender, release, renewal, extension or other action.

4.      Guarantor agrees that no promises, representations, agreements, conditions or covenants have been made relating to this Guaranty other than those contained herein, and that no modification of the terms hereof shall be binding on Pension Fund unless in writing signed by Pension Fund.

170144.1

5.      Guarantor further agrees to provide Pension Fund promptly with such information pertaining to Guarantor's financial condition as may reasonably be requested by Pension Fund from time to time.

6.      Guarantor hereby authorizes and empowers any attorney of any court of record within the United States of America or elsewhere to appear for Guarantor in such Court and, with or without complaint filed, confess judgment, or a series of judgments, so often as any such default shall be made, against Guarantor in favor of Pension Fund for the unpaid sums due, together with interest thereon, costs of suit and an attorney's commission for collection equal to the greater of $750 or ten percent (10%) of such sums due, on which judgment or judgments one or more executions may issue forthwith.  Such authority and power shall not be exhausted by any exercise thereof, and judgment may be confessed as aforesaid from time to time, as often as there is occasion therefor, and for doing so, this Guaranty or a copy verified by affidavit shall be sufficient warrant.  Guarantor hereby forever waives and releases all errors in said proceedings, waives stay of execution, the right of inquisition and extension of time for payment, agrees to the condemnation of any property levied upon by virtue of any such execution, and waives all exemptions from levy and sale of any property that now or hereafter may be exempted by law.

7.      This Guaranty shall bind Guarantor and Guarantor's heirs, executors, administrators and assigns, and the benefits hereof shall inure to Pension Fund, its successors and assigns.

8.      This Guaranty shall terminate and be of no further force or effect upon the payment and performance in full of all of the Obligations of Company under the Agreement, provided that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the Obligations is rescinded or must otherwise be returned by

170144.1

Pension Fund upon the bankruptcy, reorganization or similar proceeding of relief of Company under state or federal law, all as though such payment had not been made.

     9.     If more than one Guarantor shall execute this Guaranty, then this Guaranty shall be the joint and several obligation of such Guarantors, and shall not be revoked or impaired as to one by the death or bankruptcy of any other or by the revocation or release from any obligations hereunder of any Guarantor.

     10.     This Guaranty is an instrument of suretyship and not merely a guaranty. Should Company at any time be in default under any obligation beyond any applicable notice and cure period, if any, Pension Fund may proceed directly and immediately under this Guaranty against the Guarantor, both jointly and severally, to the full extent of the amount or performance with respect to such obligation, without first being required to proceed against Company or any other person or entity, or against any other security for the Company's obligations to Pension Fund. The Guaranty and Surety contained in this Guaranty is absolute and unconditional, primary, direct and immediate, and shall be valid and binding upon Guarantor regardless of any invalidity, defect or unenforceability of or in the Agreement, any action or inaction by Pension Fund, or any other circumstance which might otherwise constitute a defense available to, or a discharge or release of, Company, or a Guarantor, by operation of law.

     11.     If any provision of this Guaranty is found by a court of competent jurisdiction to be prohibited or unenforceable, such provision shall be ineffective only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision nor the other provisions hereof, all of which shall be construed in favor of Pension Fund in order to effect the provisions of this Guaranty.

     12.     This Guaranty shall be governed by the laws of the Commonwealth of

170144.1

Pennsylvania, to the extent not governed by federal law.

13. All notices, demands, requests, consents and other communications by the Parties hereunder shall be in writing and shall be given by (i) hand delivery, (ii) certified mail, return receipt requested, or (iii) reliable overnight commercial courier (charges prepaid) to the Parties in accordance with the procedure set forth in ¶13 of the Settlement Agreement.

IN WITNESS WHEREOF, this Agreement has been executed the day and year first above written.

**WARNING:** *By signing this paper you give up your right to notice and court trial. If you do not pay on time, a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the obligee whether for returned goods, faulty goods, failure on his part to comply with the agreement or any other cause.*

**THE OBLIGATION GIVING RISE TO THIS JUDGMENT NOTE CONCERNS A COMMERCIAL DEBT AND NOT A CONSUMER DEBT.**

GUARANTOR

WITNESS:_____        _____(Seal)
                                Greg Rule

170144.1

Exhibit 4



## SECURITY AGREEMENT
### Dated: August 11, 2006

This Security Agreement is made and entered into by and between Keith Rule, Inc. a/k/a Keith Rule, Incorporated ("Company") a Minnesota corporation, with its office at 4425 Second Avenue, East, Hibbing, MN 55746, St. Lois County (the "Debtor"), and International Painters and Allied Trades Industry Pension Fund (the "Secured Party" or "Pension Fund").

### W I T N E S S E T H:

**WHEREAS**, the Debtor owes $131,439.27 ("Total Debt") to Secured Party; and

**WHEREAS**, the Debtor by a certain Settlement Agreement dated August 11, 2006 in favor of the Secured Party has evidenced its indebtedness to Secured Party in the total amount of $ $131,439.27 as of July 31, 2006 and, absent a default, its obligation to pay $97,575.51 ("Settlement Sum") to Secured Party with interest at the rate of 8% compounded daily from July 31, 2006, all as more fully provided in the Settlement Agreement which is incorporated herein by reference; and

**WHEREAS**, the Debtor has offered to pay the Settlement Sum plus interest to the Pension Fund with a $60,000 initial payment and the remaining balance in not more than thirty (30) consecutive monthly installments beginning August 15, 2006, which offer Secured Party have accepted; and

**WHEREAS**, the Debtor has agreed to execute and deliver this Security Agreement to the Secured Party to secure payment of the Total Debt, plus interest and such other sums as may be subject to the security interest granted to the Pension Fund under the Settlement Agreement between Debtor and the Pension Fund dated August 11, 2006 or this Security Agreement; and

**WHEREAS**, the execution and delivery of this Security Agreement is a condition precedent to the Secured Party's obligations:

**NOW, THEREFORE**, in consideration of the matters recited above and intending to be legally bound, the parties hereto agree as follows:

1.    **Definitions**

    (a)    **Defined Terms**. Unless the context otherwise requires, the following terms shall have the meanings indicated:

        (i)    **"Collateral"** means and includes (a) all of the right, title and interest of Debtor in and to Debtor's Receivables; (b) all of Debtor's right, title and interest in and to the goods or any real or personal property represented by or securing any of the Receivables; (c) all of the Debtor's rights as an unpaid vendor or lienor, including stoppage in transit, replevin and reclamation relating to or concerning all or any part of Debtor's Receivables; (d) all guaranties, pledges, mortgages on real or personal property, leases or other

170144-1

agreements or property securing performance or payment to Debtor or relating to all or any part of Debtor's Receivables including, without limitation, any security agreement, financing statement or other document relating to or concerning all or any part of such Receivables; (e) all moneys, securities and other property and the proceeds thereof, now or hereafter held or received by, or in transit to, Secured Party from or for Debtor, relating to or concerning all or any part of Debtor's Receivables, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all of Debtor's credits and balances with Secured Party at any time existing; (f) all books, records, ledger cards and other property and general intangibles at any time evidencing or relating to or concerning all or any part of Debtor's Receivables ("Records"); and (g) all proceeds of all or any part of the foregoing in whatever form.

(ii)    **"Receivables"** means the Debtor's work in progress, accounts, contract rights, instruments, documents, chattel paper and general intangibles, whether performed or unperformed, secured or unsecured, now existing or owned or hereafter created or acquired, and whether or not specifically assigned to Secured Party hereunder.

(iii)    **"Obligations"** means all indebtedness, obligations and liabilities of any kind of the Debtor to the Secured Party, now existing or hereafter arising, and whether direct or indirect, acquired outright, conditionally or as collateral security including obligations referred to in the Settlement Agreement and which are intended to be subject to the security interest granted to Secured Party by Debtor.

(iv)    **"Closing Date"** shall mean August 11, 2006 or such other date as may be agreed to by Debtor and Secured Party.

(v)    **"Settlement Agreement"** means the settlement agreement between Debtor and the Pension Fund dated August 11, 2006 as set forth in the letter from Sanford G. Rosenthal to James Obligors.

(b)    **Other Terms**.  All terms not otherwise defined in this Security Agreement or the Settlement Agreement that are defined in the Uniform Commercial Code shall have the meanings assigned to them therein.

2.    **Grant of Security Interest**.  To secure the prompt payment, performance and satisfaction of the Obligations in full and when due, the Debtor hereby pledges, assigns and grants to Secured Party and agrees that Secured Party shall have a continuing lien upon and a general security interest in and lien on all the Collateral.

3.    **Secured Party's Expenses**.  Debtor shall pay to Secured Party on demand all expenses and expenditures, including reasonable attorneys' fees and other legal expenses incurred or paid by Secured Party in exercising or protecting its interest, rights and remedies under this Security Agreement, plus interest thereon at the effective rate of 8% per annum compounded daily.  This Security Agreement and the Collateral shall also secure payment of all such amounts.

170144.1

4.    **Representation, Warranties and Covenants.**  The Debtor represents and warrants to the Secured Party and covenants with the Secured Party that:

(i)    **Business Location**. The location of the chief executive office of the Debtor and the location where the Debtor maintains its records with respect to the Collateral is the place of business set forth above as the Debtor's address.

(ii)    **Delivery of Documents**.  Concurrently with the execution of this Agreement, and at any time or times hereafter at the request of the Secured Party, the Debtor shall execute and deliver to the Secured Party all assignments, certificates of title, conveyances, assignments, financing statements, renewal financing statements, affidavits, notices and all other instruments and documents that the Secured Party may reasonably request, in form satisfactory to the Secured Party, and shall take any and all other steps reasonably requested by the Secured Party, in order to evidence, perfect and maintain the security interest granted herein by the Debtor to the Secured Party.

(iii)    **Title to Collateral**.  Except for any financing statements in favor of third parties originally filed prior to the Closing Date ("Prior Liens"), Debtor has exclusive title to the Collateral free and clear of any lien, claim, security interest or other encumbrance senior to that created hereby in favor of the Secured Party. The Debtor shall warrant and defend its title to the Collateral against the claims and demands of all persons whomsoever.

(iv)    **Corporate Status and Authority**.  The Debtor is a duly organized and validly existing New Jersey corporation with full power, authority and right to incur and perform its obligations under this Security Agreement and the Settlement Agreement.

(v)    **Requirements for Collateral**.  The Collateral will meet the following requirements at the Closing Date and thereafter until all Obligations of Debtor to Secured Party are paid in full: (a) the account will have arisen from the performance of services of Debtor which the Debtor reasonably believes to have been fully and satisfactorily performed; (b) the account is not subject to any prior assignment, claim, lien or security interest other than the Prior Liens and that of the Secured Party or otherwise agreed to by Secured Party; and (c) the account arose in the ordinary course of the Debtor's business.

(vi)    **Certification**.  Until the amounts due Secured Party under this Security Agreement and the Settlement Agreement, have been paid in full, Debtor will provide to counsel for the Secured Party on the date this Security Agreement is executed and thereafter on the tenth (10th) day following the end of each calendar month, an accounts receivable aging report that is acceptable to counsel for the Secured Party. The report shall, at a minimum, identify each account debtor by name and address and state the amount owed to Debtor by such account debtor in the following periods: current (1-30 days); over 30 days; over 60 days; over 90 days; and over 120 days. In addition to the account receivable aging report, Debtor will provide counsel for Secured Party with a verified statement of the amount owed on the Prior Liens.

(vii)    **Operations**.  Debtor will promptly notify the Secured Party of any

170144.1

material adverse change in the business, operations or financial condition of Debtor.

(viii) **Financial Condition**. Debtor will promptly notify Secured Party of any claim which is asserted or reasonably likely to be asserted for purposes of GAAP, including Statement of Financial Accounting Standards No. 5, which could have a material adverse effect on the business, operations or financial condition of Debtor and its ability to perform its obligations under the Settlement Agreement.

(ix) **Maintenance of Identity**. Absent the written consent of the Secured Party, Debtor, its successors and assigns, will continue to be responsible until all amounts due the Pension Fund are paid in full regardless of any change in the form or identity of Debtor's business(es) as they existed at the time of Closing. In particular, Debtor will not sell, lease or otherwise dispose of assets except in the ordinary course of business and/or for good and at lease equivalent financial consideration.

(x) **Location Change**. Debtor will promptly notify Secured Party of any change of location of its place of business or of the addition of any new place of business.

(xi) **Accuracy of Information**. All information supplied to Secured Party and statements made by Debtor in any financial, credit or accounting statements or application for credit prior to, contemporaneously with, or subsequent to the execution of this Security Agreement are and shall be materially true, correct, complete, valid and genuine.

(xii)(1) **Liens On Collateral And Discharge By Secured Party**. Except for the Prior Liens and any financing statement in favor of Secured Party, no financing statement covering any of the Collateral or the proceeds thereof is on file in any public office and at Closing the Collateral shall not be subject to any other lien or encumbrance of any nature. Debtor has not granted or given, and shall not grant, pledge or assign or give a security interest in or a financing statement covering any of the Collateral to anyone other than Secured Party or otherwise encumber, or permit any liens or security interests (other than those in favor of the Secured Party and Prior Liens) to attach to any of the Collateral, nor permit any of the Collateral to be levied upon under any legal process. On demand, Debtor will execute and deliver to Secured Party all financing statements, amendments thereto and other papers and do all acts as in the judgment of the Secured Party may be necessary or appropriate to evidence, establish and maintain a valid, prior and perfected security interest in the Collateral under the Uniform Commercial Code of the Commonwealth of Pennsylvania or any other applicable law. Debtor shall pay all fees, costs and taxes of filings of financing statements or other papers. Whenever permitted by law, Debtor authorizes Secured Party to file financing statements and continuations thereof without the signature of Debtor. A copy of this Security Agreement or a copy of any financing statement prepared in connection with this Security Agreement may itself be filed as a financing statement.

(2) Upon any breach of the foregoing covenant against encumbrances, Secured Party may elect (but without obligation to do so) to discharge the encumbrance for the account of and without notice to the Debtor, and all expenses incurred by Secured Party in so

170144.1

doing, together with interest thereon, shall be added to the outstanding balance of Debtor's Obligation to Secured Party and shall be payable by the Debtor on demand and covered by the security interest granted to Secured Party by Debtor.

(xiii)  **Notice Of Liens And Indebtedness**.  Debtor shall immediately notify Secured Party in the event there ever arises against any of the Collateral any lien, assessment or tax or other liability, whether or not entitled to priority over Secured Party's security interest hereunder.  Notwithstanding the foregoing, Debtor shall pay, prior to delinquency, all taxes, charges, liens and assessments against the Collateral.  In the event of Debtor's failure to pay and whether or not Debtor has given notice, Secured Party at their option shall have the right (but shall be under no obligation) to pay any tax or other liability of Debtor deemed by Secured Party in good faith to affect Secured Party's interests hereunder and, further, Secured Party shall be the sole judge as between them and the Debtor of the legality and validity of the tax or other liability and the amount necessary to discharge same.  Debtor shall repay to Secured Party on demand all sums which Secured Party shall have paid under this subsection in respect of taxes or other liabilities of Debtor with interest thereon at the effective rate of 8% per annum compounded daily.  Such repayment with interest shall become part of Debtor's Obligations secured by this Security Agreement.  Secured Party shall be subrogated to the extent of any such payment by it to all the rights and liens of the payee against Debtor's assets.

(xiv)  **Books And Records**.  Debtor shall faithfully and at all times maintain reasonably complete and accurate books and records covering the Collateral and make all necessary entries therein to reflect the events and transactions giving rise to the accounts and proceeds included in the Collateral and all payments, credits and adjustments applicable thereto. Debtor shall keep Secured Party fully and accurately informed as to the locations of all such books and records.  Upon the occurrence of an Event of Default, Secured Party, or their agents, are hereby given the right and privilege of auditing the books and records of Debtor relating to the Collateral at any reasonable time Secured Party deems proper and, if requested by Secured Party, Debtor will make copies of such books and records and deliver such to Secured Party.

(xv)  **Additional Liens On Collateral/Notice To Secured Party**. Except for the Prior Liens, Debtor shall not, voluntarily or involuntarily, subject the Collateral or its proceeds, or allow the Collateral or its proceeds to be subjected, to any interest of any transferee, buyer, secured party, encumbrancer or other third party.

(xvi)  **Notice Of Adverse Change In Value of Collateral**.  Debtor shall notify Secured Party promptly and in writing when the account against which consideration was or may be made under this Security Agreement ceases to meet any of the requirements of this Security Agreement.

(xvii)  **Further Assurances**.  Debtor shall execute and deliver to Secured Party from time to time all such other agreements, instruments and other documents, including all requested financing and continuation statements (as such terms are used in the Uniform Commercial Code), and do all such other and further acts and things as Secured Party may reasonably request in order further to evidence or carry out the intent of this Security Agreement

170144.1

and the Settlement Agreement or to perfect the liens and security interests created hereby or intended so to be.

     5.   **Default**. The occurrence or existence of any one or more of the following events and whether caused voluntarily, involuntarily or effected by operation of law and if not remedied within any time period for cure set forth in the Settlement Agreement or this Security Agreement shall constitute an Event of Default by the Debtor under this Security Agreement:

     (i)   **Failure To Pay**. The Debtor fails to pay when due or within any applicable cure or grace period any amount payable on any of the Obligations or fails to submit any required monthly remittance report and/or contributions in a full and timely manner.

     (ii)   **Insolvency**. The Debtor becomes insolvent, makes an assignment for the benefit of its creditors or calls a meeting of its creditors, or any petition is filed by or against the Debtor under any provision of any bankruptcy or other law alleging that the Debtor is insolvent or unable to pay its debts as they mature or a receiver or trustee is appointed to take charge of the assets of the Debtor. The events described in this Section 5(ii) shall not be deemed an Event of Default provided the Debtor continues to make all payments required by the Settlement Agreement and otherwise complies with all terms and conditions of the Settlement Agreement, the Security Agreement and any constituent documents and, in connection with any Chapter 11 bankruptcy, the Debtor assumes the Settlement Agreement, the Security Agreement and all of related documents and cures all defaults.

     (iii)   **Attachments/Change In Financial Condition**. Any attachment or garnishment against any property of the Debtor is issued or any change occurs in the financial condition of the Debtor that, in the Secured Party's sole judgment, is materially adverse to the priority of the Secured Party's security interest or the Debtor's ability to make all payments required under the terms of the Settlement Agreement.

     (iv)   **Mergers, etc**. The Debtor is or becomes a party to a sale (whether a bulk sale or otherwise), merger, consolidation, share exchange or division or is dissolved or reorganized (except in a case where the surviving or resulting corporation in a merger, consolidation or share exchange is owned entirely by the shareholders of the Debtor prior to such event or where the surviving or resulting corporation in a merger, consolidation or share exchange agrees to succeed to Debtor's obligation under the Settlement Agreement and this Security Agreement).

     (v)   **Failure To Perform**. The Debtor fails to observe or perform any covenant or agreement contained in this Security Agreement, the Settlement Agreement or in any other agreement now existing or hereafter entered into by the Debtor with the Secured Party relating to any of the Obligations, and such failure is not remedied within the applicable cure period set forth in the Settlement Agreement.

     (vi)   **Cessation Of Business**. Debtor substantially ceases to engage in the major business activity in which it was engaged on the date of the execution of this Security

170144.1

Agreement.

         (vii)  **Misrepresentation**. Any warranty, representation, or statement contained in this Security Agreement and the Settlement Agreement which were made or furnished to Secured Party by or on behalf of the Debtor, directly or through counsel, in connection with this Security Agreement and the Settlement Agreement, or to induce Secured Party to extend credit to Debtor proves to have been false in any material respect when made or furnished.

         (viii)  **Other**. Any Event of Default described in the Settlement Agreement.

    6.    **Remedies**. Upon the occurrence of an Event of Default not timely cured in accordance with provisions in the Settlement Agreement, Secured Party shall have, in its sole and absolute discretion, the right, but not the obligation, to use one or more of the following remedies or any other remedy provided in this Security Agreement or the Settlement Agreement:

         (i)  **Acceleration**. Secured Party may, without notice to Debtor, declare all or any of the Obligations under this Security Agreement and the Settlement Agreement secured by this Security Agreement whether or not then due and payable to be immediately due and payable and will have, in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code as in effect in the Commonwealth of Pennsylvania, federal law and the laws of the State in which the Secured Party are located, including, without limitation, the right to sell or otherwise dispose of any or all the Collateral. All such rights shall be exercised for the benefit of the Secured Party.

         (ii)  **Nonacceleration**. Secured Party may seek collection of unpaid amounts under this Security Agreement and the Settlement Agreement, together with interest, attorney fees and costs without acceleration and such action shall not be considered a waiver of default or exhaustion of a similar remedy on future defaults.

         (iii)  **UCC Rights**. The Secured Party may, at their option, exercise from time to time any and all rights and remedies available to them under the Uniform Commercial Code or otherwise, including the right to foreclose or otherwise realize upon the Collateral and to dispose of the Collateral at one or more public or private sales or other proceedings, and the Debtor agree that the Secured Party or its nominees may become the purchaser at any such sale. The Debtor agrees that ten (10) days will be reasonable prior notice of the date of any public sale or other disposition of all or any part of the Collateral, or of the date on or after which any private sale or other disposition of the same may be made.

         (iv)  **Notice Of Sale Of Collateral**. Secured Party will give Debtor notice of the time and place of public sale of the Collateral or of a time after which any private sale or other intended disposition is to be made by sending notice to Greg Rule, Keith Rule, Inc. a/k/a Keith Rule, Incorporated, 4425 Second Avenue, East, Hibbing, MN 55746 at least ten (10) days before the sale or disposition, which provisions for notice Debtor agrees is reasonable.

170144.1

(v)    **Collection**.  Secured Party shall have the right to send notice of assignment and/or notice of its security interest to any and all of Debtor's customers or any third parties holding or otherwise concerned with any of the Collateral, and thereafter Secured Party shall have the right to collect the Receivables and/or take possession of the Collateral, and the books and records relating thereto.  All of Secured Party's collection expenses shall be charged to Debtor's account and added to the Obligations.

(vi)    **Collection Charges**.  Debtor shall pay Secured Party on demand any and all expenses which may have been incurred by Secured Party, with interest, in connection with the custody, preservation, use, operation, preparation for sale or sale of any of the Collateral, the incurring of all of which are hereby authorized to the extent Secured Party deem the same advisable.  Debtor's liability to Secured Party for any such payment, with interest, shall be included as part of Debtor's Obligation(s) to Secured Party and shall be secured under the terms of this Security Agreement.

(vii)    **Crediting Of Payments**.  After deducting all costs and expenses of every kind incurred or incidental to the custody, preservation, use, operation, preparation for sale or sale or otherwise disposing of the Collateral or in any way relating to Secured Party's rights, including, without limitation, interest, attorneys' fees and other legal expenses, which costs, expenses and interest Debtor agrees to pay, Secured Party may apply the net proceeds of any sale or other disposition of the Collateral to payment of the Obligations or claims of Secured Party against Debtor which are secured by this Security Agreement, whether due or not, in such order as Secured Party may elect.  In applying net proceeds to payment of obligations or claims, proper rebate for any unearned interest will be made.  Only after full payment of all amounts Debtor owes to Secured Party and any other payments Secured Party may be required by law to make, need Secured Party account to Debtor for any surplus.  Debtor shall remain liable to Secured Party for the payment of any deficiency with interest at the rate of 8% per annum compounded daily.

(viii)    **Delayed Enforcement**.  No act, delay, omission, or course of dealing between Debtor and Secured Party will be a waiver of any of Secured Party's rights or remedies under this Security Agreement and the Settlement Agreement, and no waiver, change, modification, or discharge in whole or in part of this Security Agreement and the Settlement Agreement, or of any Obligations secured by this Security Agreement will be effective unless in writing and signed by Secured Party.  A waiver by Secured Party of any rights or remedies under the terms of this Security Agreement or the Settlement Agreement or with respect to any Obligations secured by this Security Agreement on any occasion will not be a bar to the exercise of any right or remedy on any subsequent occasion.  All rights and remedies granted Secured Party under this or any other agreement between Secured Party and Debtor, including the Settlement Agreement, will be deemed concurrent and cumulative and not alternative, and may be exercised by Secured Party singly or concurrently and the exercise of any one or more of them at the same time or at different times will not be a waiver of any other.  Secured Party may accept late or partial payments as well as payments marked "payment in full" or with other restrictive endorsement without losing any of their rights under this Security Agreement and the Settlement Agreement.

170144.1

(ix)    **Power of Attorney**. Subject to the rights of any senior secured lender with a prior perfected security interest in the Collateral, Secured Party shall have the right to receive, endorse, assign and/or deliver in Secured Party's name or Debtor's any and all checks, drafts and other instruments for the payment of money relating to the Receivables, and Debtor hereby waives notice of presentment, protest and non-payment of any instrument so endorsed. Debtor hereby irrevocably appoints any officer, employee or agent of Secured Party as the Debtor's true and lawful attorney-in-fact to exercise at any time after the occurrence of an Event of Default all or any of the following powers, which, being coupled with an interest, shall be irrevocable until the Total Debt shall have been paid in full: (i) to receive, take, endorse, assign, deliver, accept and deposit in the name of the Secured Party or Debtor, any and all cash, checks, notes, acceptances, drafts, money orders, remittances and other instruments of payment or Collateral that may come into Secured Party's possession; (ii) to sign Debtor's name on any invoice relating to any of the Receivables;  (iii) to execute in Debtor's name and file one or more financing, amendment and continuation statements covering the Collateral; (iv) to receive, open and dispose of all mail addressed to Debtor and to notify the Post Office authorities to change the address for delivery of mail addressed to the Debtor to such address as Secured Party may designate; (v) to transmit to persons indebted on accounts notice of Secured Party's interest in the accounts and to request from such persons at any time, in the name of Debtor, or Secured Party, information concerning the accounts and the amounts owing on the accounts; (vi) to notify persons indebted on the accounts to make payment directly to Secured Party; (vii) to take or bring, in Debtor's or Secured Party's name, all steps, actions, suits or proceedings deemed by the Secured Party necessary or desirable to effect collection of Debtor's accounts and (viii) to do all other acts and things necessary to carry out this Agreement. Without limitation of any of the foregoing powers, the Secured Party are authorized to accept and to deposit all collections in any form relating to Debtor's accounts, including any remittance which may reflect deductions. Any such attorney of Debtor shall have full power to do any and all things necessary to be done with respect to the above transactions as fully and effectually as Debtor might do, and Debtor hereby ratifies and approves all that said attorney shall lawfully do or cause to be done by virtue hereof. Debtor releases Secured Party and their trustees, administrators, officers, employees, attorneys and agents, from any liability arising from any act or acts under or in furtherance of this Section 6(ix), whether of omission or commission, or whether based upon any error of judgment or mistake of fact or law; this power being coupled with an interest is irrevocable while any of the Obligations remain unpaid.

(x)    **Additional Rights**. Secured Party shall have all rights and remedies set forth in the Settlement Agreement with the Debtor.

7.    **Remedies Cumulative**. All rights and remedies granted the Secured Party under this or any other agreement between the Secured Party and the Debtor, including the Settlement Agreement, will be deemed concurrent and cumulative and not alternative, and the Secured Party may proceed with any number of remedies at the same time or at different times until all the Obligations are fully satisfied. The Debtor will pay to the Secured Party on demand any and all expenses, including reasonable attorneys' fees and disbursements and legal expenses with interest at the rate of 8% per annum compounded daily incurred by the Secured Party:

170144.1

(i)     in the prosecution or defense of any action growing out of or connected with the subject matter of this Security Agreement, the Settlement Agreement, the Obligations, the Collateral or any of the Secured Party's rights therein; or

(ii)    in connection with the custody, preservation, preparation for sale or sale of the Collateral;

the incurring of any or all of which are hereby authorized to the extent the Secured Party deem the same advisable.

8.     **Representations, Warranties and Agreements of Secured Party.**  Secured Party and the individual(s) signing on their behalf represent, warrant and agree as follows:

(a)     **Tax Exempt Status Of Pension Fund and Deductibility of Contributions**.  The Pension Fund has been determined to be a trust or plan described in 26 U.S.C. §401(a), exempt from federal income tax under 26 U.S.C. §501(a), by a valid Internal Revenue Service determination letter currently in force and is a multiemployer pension benefit plan as defined in 29 U.S.C. §1001(2) and (3).

(b)     **Authority**.  The Trustees of Secured Party have full power, authority and right to incur and perform the obligations of Secured Party provided for in this Security Agreement and the Settlement Agreement and have delegated authority to the person signing these documents to execute this Security Agreement and the Settlement Agreement on behalf of Secured Party and their trustees in accordance with the law and documents governing Secured Party.

(c)     **Discretion**.  Any discretion given to Secured Party under this Security Agreement shall be exercised reasonably and in good faith.

(d)     **Release**.  Secured Party promises to release and do release Debtor from any and all claims for contributions and related liquidated damages, interest, attorney fees or costs to Secured Party accrued or incurred on or before the date of this Security Agreement and the Settlement Agreement except as provided in this Security Agreement and the Settlement Agreement and subject to Debtor's full and complete performance of its obligations under this Security Agreement and the Settlement Agreement and the accuracy of Debtor's representations.

9.     **Agreement as Financing Statement**.  A copy of this Security Agreement or a copy of any financing statement prepared in connection with this Security Agreement may be filed as a financing statement.

10.     **Term**.  This Security Agreement shall continue in full force and effect so long as any of the Obligations shall exist from time to time.

11.     **Miscellaneous**.

170144.1

(a)    **Successors and Assigns**.  This Security Agreement and all of the terms and conditions hereof shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

(b)    **Governing Law**.  This Security Agreement shall be governed by and interpreted and enforced in accordance with the substantive laws of the Commonwealth of Pennsylvania, without reference to the principles governing the conflict of laws applicable in that or any other jurisdiction, to the extent not governed by Federal law.  To the extent of exercising rights and remedies under the Uniform Commercial Code, the Uniform Commercial Code in effect in the Commonwealth of Pennsylvania shall govern.

(c)    **Notice to Secured Party**.  Any notice to the Secured Party will be effective only upon receipt by the Secured Party and their counsel as follows or to such other address or person as the Secured Party may specify in writing by notice to the Debtor:

IUPAT Industry Pension Fund
1750 New York Avenue
United Union Building
Washington, DC  20006-5387
Attn:  Thomas Montemore
Fax:  (202) 783-2597

With copies to:

Jessica L. Tortella, Esquire
Jennings Sigmond, P.C.
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
Fax:  (215) 922-3524

(d)    **Notice to Debtor**.  Any notice to the Debtor will be effective upon receipt by the Debtor by addressing notice to the Debtor at:

Greg Rule
Keith Rule, Inc.
a/k/a Keith Rule, Incorporated
4425 Second Avenue, East
Hibbing, MN 55746
Fax: (218) 263-6635

or such other address (in the United States) as the Debtor may specify in writing by notice to the Secured Party.

(e)    **Timing of Receipt of Notice**.  Notice(s) shall be considered received

170144.1

when received by the party or its counsel. Absent a delivery receipt or affidavit, first class U.S. Postal System delivery shall conclusively be considered received on the fifth mail day after deposit, overnight delivery on the second business day after deposit and a telecopy on voice confirmation of receipt.

(f) **Interpretation**. All headings contained in this Security Agreement are for convenience or reference only, do not form a part of this Security Agreement and shall not affect in any way its meaning or interpretation. Words used herein, regardless of the gender or number specifically used, shall be deemed to include any other gender, masculine, feminine or neuter, and any other number, singular or plural, as the context may require.

(g) **Limitation of Defenses**. All rights and remedies of Secured Party shall inure to the benefit of their successors and assigns and Debtor may assert no claim or defenses against the assignee which he may have against Secured Party except those granted by this Security Agreement.

(h) **Copies**. This Security Agreement may be executed in two or more counterparts and any party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together will constitute one and the same instrument. It shall not be necessary in making proof of this Security Agreement or any counterpart to produce or account for any of the other counterparts.

(i) **Severability**. The provisions of this Security Agreement are intended to be severable. If any provision of this Security Agreement shall be held invalid or unenforceable in whole or in part in any jurisdiction such provision shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability only and shall be replaced by any legal provision which best approximates the original intent of the parties. The entire Security Agreement shall remain valid and enforceable in any other jurisdiction.

(j) **Signatory Liability**. There shall be no individual liability of the persons signing this Security Agreement and the Settlement Agreement for representations or warranties made in good faith or on legal advice.

12. **Termination of Security Agreement**. Upon Debtor's payment of all amounts owed to Secured Party and, if at such time Debtor is current in the payment of contributions to Secured Party, then Secured Party shall cancel this Security Agreement and execute any documents necessary to effect a cancellation or termination of the security interest on any official record maintained by any State of local government body.

13. **Authority**. The undersigned hereby represent that each is authorized to enter into this Security Agreement and further that each has had an opportunity to review its terms with counsel of their respective choice. The undersigned further represent that each has entered into this Security Agreement freely, voluntarily and without coercion and with a full understanding of its terms.

170144.1

**IN WITNESS WHEREOF**, this Security Agreement has been executed on the date first set forth above.

IUPAT Industry Pension Fund                          Keith Rule, Inc.
                                                      a/k/a Keith Rule, Incorporated


By: _____    By: _____
    Thomas Montemore, On behalf                 Greg Rule, President and On behalf
    of the IUPAT Industry Pension Fund          of Keith Rule, Inc.



                                              _____
                                              Corporate Secretary

                                              Place Corporate
                                              Seal Here



Sworn and subscribed to before me this       day of                    , 2006.


_____
Notary Public

My commission expires:

170144.1

# EXHIBIT "A"

(to UCC-1 Financing Statement given by Keith Rule, Inc. a/k/a Keith Rule, Incorporated, as Debtor, to the IUPAT Industry Pension Fund ("Pension Fund") as Secured Party.

## Description of the Collateral

"Collateral" means and includes (a) all of the right, title and interest of Debtor in and to Debtor's Receivables; (b) all of Debtor's right, title and interest in and to the goods or any real or personal property represented by or securing any of the Receivables; (c) all of the Debtor's rights as an unpaid vendor or lienor, including stoppage in transit, replevin and reclamation relating to or concerning all or any part of Debtor's Receivables; (d) all guaranties, pledges, mortgages on real or personal property, leases or other agreements or property securing performance or payment to Debtor or relating to all or any part of Debtor's Receivables including, without limitation, any security agreement, financing statement or other document relating to or concerning all or any part of such Receivables; (e) all moneys, securities and other property and the proceeds thereof, now or hereafter held or received by, or in transit to, Secured Party from or for Debtor, relating to or concerning all or any part of Debtor's Receivables, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all of Debtor's credits and balances with Secured Party at any time existing; (f) all books, records, ledger cards and other property and general intangibles at any time evidencing or relating to or concerning all or any part of Debtor's Receivables ("Records"); and (g) all products and proceeds of all or any part of the foregoing in whatever form, including insurance proceeds and proceeds of proceeds.

"Receivables" means and includes the Debtor's work in progress, accounts, contract rights, instruments, documents, chattel paper and general intangibles, whether performed or unperformed, secured or unsecured, now existing or owned or hereafter created or acquired, and whether or not specifically assigned to Secured Party hereunder together with all products and proceeds of all or any part of the foregoing in whatever form, including insurance proceeds and proceeds of proceeds.

170144.1